# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | C.A. No. _____ |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

Plaintiff American General Life Insurance Company, by and through its counsel, files this Complaint for declaratory and other relief under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, showing this Court as follows:

## INTRODUCTION

1. This case involves two life-insurance policies that American General issued in 2005 and 2006, respectively. Those Policies were issued to the Mike Magid Irrevocable Trust and insured the life of Meyer Magid ("the Insured"). But almost immediately after they were issued, the Policies were assigned to another entity that was a stranger to the Insured and, in the years that followed, the Policies repeatedly changed hands among various life settlement companies. In other words, various companies used the Policies to wager on the Insured's life. The current owner of the Policies is the defendant here: Wilmington Trust, National Association, who holds the policies as a securities intermediary.

2. This case centers around a misstatement of the Insured's age in his Applications for the Policies. The Applications incorrectly represented that the Insured was 84 years old at the time of the Applications. In reality, he was 86 years old. As is standard in the life-insurance industry,

the Policies were set to "mature"—that is, expire—when the Insured attained the age of 100. If the Insured passed away before reaching age 100, American General would pay the Death Benefit specified in the Policies (assuming the Policies were otherwise in good standing). If the Insured outlived the contracts by reaching age 100, American General would pay the Policies' Cash Surrender Value.

3. The Insured passed away *after* he reached age 100. Wilmington Trust then made a claim to American General on the Policies. During the claim process, American General learned that the Insured's age had been misstated in the Applications and that, in actuality, the Insured was over the age of 100 when he passed away. As a result, American General paid Wilmington Trust the Cash Surrender Value for the Policies as of when the Insured reached age 100 and the Policies "matured." In total, American General has paid Wilmington Trust over $1.4 million in connection with the Policies.

4. Wilmington Trust disputes American General's payments. In essence, Wilmington Trust contends that the Insured's misstatement of age should have no effect on the reality that the Policies' maturity dates were set on the falsehood of an incorrect birthdate. The Policies, however, allow for a redetermination of benefits or an adjustment of the contracts' terms if the Insured's age has been misstated.

5. American General now asks this Honorable Court to declare that American General's payment of the Policies' Cash Surrender Values—based on the Insured's true age—was the correct payment under the contracts.

**THE PARTIES**

6. Plaintiff American General Life Insurance Company is a foreign insurance corporation organized under the laws of the State of Texas with its principal place of business in Texas. It is a citizen of the State of Texas under 28 U.S.C. § 1332(c)(1).

7. Defendant Wilmington Trust, National Association, is a national banking association with its main office and principal place of business located at 1100 North Market Street, Wilmington, Delaware, 19890. It is a citizen of the State of Delaware under 28 U.S.C. § 1348.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between the parties. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Jurisdiction is further appropriate because this is an action for declaratory judgment under 28 U.S.C. § 2201, and an actual case or controversy of a justiciable nature exists between the parties involving the rights and liabilities under two insurance policies.

10. Wilmington Trust is subject to personal jurisdiction in this State because it has its main office and principal place of business in Wilmington, Delaware.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Wilmington Trust is subject to this Court's personal jurisdiction and therefore resides in this District. That is because Wilmington Trust has its main office and principal place of business in Wilmington, Delaware.

## FACTUAL ALLEGATIONS

**A.     The Applications for the Policies**

12. On September 19, 2005, the Insured applied for a flexible premium life-insurance policy from American General with a death benefit amount of $5,000,000. A true and correct copy of that September 2005 Application is part of Policy No. UM0033913L and is attached as **Exhibit A**.

13. On January 1, 2006, the Insured applied for another flexible premium life-insurance policy from American General, again for a death benefit amount of $5,000,000. A true and correct

copy of that January 2006 Application part of Policy No. UM0023684L and is attached **Exhibit B**.

14. Both the September 2005 Application and the January 2006 Application stated that the Meyer Magid Irrevocable Trust would own the resulting policies on the life of the Insured. (Ex. A at 28; Ex. B at 28.)

15. On the September 2005 Application and the January 2006 Application, the Insured represented that he was born in 1921. (Ex. A at 27; Ex. B at 27.) In actuality, the Insured was born in 1919—two years earlier.

**B.    The Policies**

16. On November 7, 2005, American General issued Flexible Premium Life Insurance Policy No. UM0033913L ("the 13L Policy") to the Meyer Magid Irrevocable Trust. A true and correct copy of the 13L Policy is attached as **Exhibit A**. The 13L Policy insured the Insured's life for a specified death benefit of $5,000,000. American General issued the 13L Policy in connection with the September 2005 Application and that Application is incorporated into the 13L Policy.

17. On February 2, 2006, American General issued Flexible Premium Life Insurance Policy No. UM0023684L ("the 84L Policy"), also to the Meyer Magid Irrevocable Trust. A true and correct copy of the 84L Policy is attached as **Exhibit B**. The 84L Policy insured the Insured's life for a specified death benefit of $5,000,000. American General issued the 84L Policy in connection with the January 2006 Application and that Application is incorporated into the 84L Policy.

18. Together, the 13L Policy and the 84L Policy are referred to as "the Policies," and each is referred to separately as a "Policy."

19. As is standard for flexible premium life-insurance policies, each Policy provided that it would terminate when the Insured died, when the savings account for that Policy was

insufficient to pay mortality charges and other expenses, or at a designated Maturity Date. If the Insured was alive on the Maturity Date, American General would pay the Cash Surrender Value—not the specified Death Benefit. (*See* Ex. A at 1 ("We will pay the CASH SURRENDER VALUE of this policy to the Owner on the Maturity Date if the Insured is living on that date."); Ex. B at 1 (same).)

20. Each Policy listed an "INSURANCE AGE" of "84" and a Maturity Date that was sixteen years after the Policy's Date of Issue, so that the Policies would mature when the Insured attained the age of 100. (*See* Ex. A at 3; Ex. B at 3.)

21. American General issued the Policies to mature when the Insured attained the age of 100 because, among other reasons: (1) American General did not offer the Policies for maturity dates past age 100; (2) the 1980 CSO Mortality Tables on which the Policies were issued do not provide for select ages beyond age 100; and (3) a maturity date beyond age 100 would prevent the Policies from being treated as life insurance under the Internal Revenue Code.

22. But because American General calculated and set the Maturity Date in each Policy based on the Insured's misstated age in the two Applications, the Maturity Date in each Policy was incorrect.

23. For the 13L Policy, the Maturity Date was set at November 7, 2021—sixteen (16) years after the Insured's false "INSURANCE AGE" of 84 and that Policy's Date of Issue of November 7, 2005, to correspond with an attained age of 100. Based on the Insured's true age of 86 at the time of issuance, the 13L Policy's Maturity Date would and should have been November 7, 2019.

24. For the 84L Policy, the Maturity Date was set at February 20, 2022—again, sixteen (16) years after the Insured's false "INSURANCE AGE" of 84 and that Policy's Date of Issue of

5

February 20, 2006, to correspond with an attained age of 100. Based on the Insured's true age of 86 at the time of issuance, the 84L Policy's Maturity Date would and should have been February 20, 2020.

**C.   The Claims**

25.   The Insured died on July 21, 2020.

26.   At the time of the Insured's death, Wilmington Trust owned the Policies as a "securities intermediary."

27.   During the claims handling process, American General received documentation—including the Insured's death certificate, passport, and obituary (all attached as **Exhibit C**)—showing that the Insured's true date of birth is in 1919, rather than the 1921 date listed on the Applications for the Policies.

28.   American General has asked Wilmington Trust to provide a copy of the Insured's birth certificate—or any other evidence—to prove he was born in 1921. To date, Wilmington Trust has not provided any such evidence.

29.   Given the fact that American General does not offer these Policies with a Maturity Date beyond age 100, the specifications of the Policy products, the maximum select age for the mortality table at issue, and the Internal Revenue Code's qualifications of life insurance, among other reasons, American General adjusted the Policies' Maturity Dates to reflect the Insured's true date of birth. That is, American General adjusted the Maturity Date for the 13L Policy to November 7, 2019, and it adjusted the Maturity Date for the 84L Policy to February 20, 2020. American General notified Wilmington Trust of its adjustment to the Maturity Dates by letter dated April 21, 2021, which is attached as **Exhibit D**.

30.   Based on the age-adjusted correct Maturity Dates for the Policies, the Insured died after the Policies matured. Accordingly, and as required by the Policies, American General paid

Wilmington Trust, as the most recent Owner of the Policies, the Cash Surrender Value (or maturity value) for each Policy: $174,878.23 for the 13L Policy, and $134,138.26 for the 84L Policy. American General also refunded the post-age-adjusted maturity premiums that were paid: $647,410.00 for the 13L Policy, and $453,399.36 for the 84L Policy.

## COUNT I: DECLARATORY JUDGMENT
## AMERICAN GENERAL HAS SATISFIED ITS LIABILITY UNDER
## THE POLICIES BY ISSUING THE CASH SURRENDER VALUE

31. American General repeats and incorporates the allegations in paragraphs 1–30 as if fully set forth herein.

32. Based on the Insured's true age of 86 when the Policies were issued, the 13L Policy's correct Maturity Date is November 7, 2019, and the 84L Policy's correct Maturity Date is February 20, 2020.

33. The Insured was alive on the correct Maturity Dates for the 13L Policy and the 84L Policy.

34. Each Policy provides that American General "will pay the CASH SURRENDER VALUE of this policy to the Owner on the Maturity Date if the Insured is living on that date." (Ex. A at 1; Ex. B at 1.)

35. Because the Insured was living on the correct Maturity Dates, American General's obligation under the Policies is limited to paying the Cash Surrender Value as of those dates.

36. On April 22, 2021, American General paid of the Cash Surrender Value for each Policy to Wilmington Trust.

37. An actual and justiciable controversy presently exists between Wilmington Trust and American General about American General's payment obligations, if any, under the Policies. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment. The

issuance of declaratory relief by this Court will terminate some or all of the existing controversies between the parties.

38. American General therefore seeks, and is entitled to, a judicial declaration that under the Maturity Dates reflecting the Insured's true age on the Date of Issue, American General has no further obligation to pay Wilmington Trust.

### COUNT II: DECLARATORY JUDGMENT
### APPLICATION OF THE MISSTATEMENT OF AGE PROVISION

39. American General repeats and incorporates the allegations in paragraphs 1–30 as if fully set forth herein.

40. Each Policy includes a "Misstatement of Age" Provision that provides as follows:

> If the: age or gender of the Insured . . . has been misstated to Us, we will adjust the excess of the Death Benefit Amount over the Accumulation Value on the date of death to that which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate. By age, We mean age nearest birthday as of the Date of Issue.

(Ex. A at 15; Ex. B at 15.)

41. The 1980 CSO Mortality Tables on which the Policies were issued do not provide for select ages beyond age 100.

42. As a result, the "Death Benefit Amount" which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate is zero.

43. Because the application of the Policies' Misstatement of Age provisions require adjusting the Death Benefit to zero, recovery under the Policies is limited to the Cash Surrender Value, plus a refund of any post-age-adjusted premium payments.

44. American General paid Cash Surrender Value for each Policy on April 22, 2021. At the same time, American General refunded post-age-adjusted maturity premium payments to Wilmington Trust.

45. An actual and justiciable controversy presently exists between Wilmington Trust and American General about American General's payment obligations, if any, under the Policies. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment. The issuance of declaratory relief by this Court will terminate some or all of the existing controversies between the parties.

46. American General therefore seeks, and is entitled to, a judicial declaration that under the Misstatement of Age provisions in the Policies, American General has no further obligation to pay Wilmington Trust.

## COUNT III: DECLARATORY JUDGMENT
## MODIFICATION OF THE POLICIES UNDER
## THEIR TERMS AND CONDITIONS

47. American General repeats and incorporates the allegations in paragraphs 1–30 as if fully set forth herein.

48. Under the Internal Revenue Code, to qualify as life insurance, "the maturity date . . . shall be deemed to be . . . no later than the date on which the insured attains age 100." 26 U.S.C. § 7702(e)(1)(B).

49. Each Policy contains a provision reserving to American General the unilateral right, upon notice to Wilmington Trust, to modify its terms "as required by the Internal Revenue Code or by way other applicable law, regulation, or interpretation in order to continue treatment of th[e] policy as life insurance." (Ex. A at 17; Ex. B at 17.)

50. To ensure that the Policies maintain their status as life-insurance contracts under the Internal Revenue Code, American General modified the Maturity Date of the 13L Policy to November 7, 2019, and the Maturity Date of the 84L Policy to February 20, 2020.

51. American General notified Wilmington Trust of its adjustment to the maturity dates by letter dated April 21, 2021. (*See* Ex. D.)

9

52. An actual and justiciable controversy presently exists between Wilmington Trust and American General about the modification of the Policies' Maturity Dates. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

53. The issuance of declaratory relief by this Court will terminate some or all of the existing controversies between the parties.

54. American General therefore seeks, and is entitled to, a judicial declaration that its modification of the Maturity Date of the 13L Policy to November 7, 2019, and its modification of the Maturity Date of the 84L Policy to February 20, 2020, to bring them into compliance with the Internal Revenue Code, was correct.

## PRAYER FOR RELIEF

55. WHEREFORE, premises considered, American General respectfully requests an Order including or directing the following relief:

   A. A judicial determination that American General's payment to Wilmington Trust of the age-adjusted Cash Surrender Value (or maturity value), plus a refund of post-age-adjusted maturity premiums paid, satisfied American General's obligations under the Policies in full.

   B. A judicial determination that, in light of the Insured's misstatement of age on his Applications for the Policies, American General's modification of the Maturity Date of the 13L Policy to November 7, 2019, and its modification of the Maturity Date of the 84L Policy to February 20, 2020, such that the Policies matured when the Insured attained age 100, was correct.

   C. For other such relief the Court deems proper, just, and equitable.

Plaintiff demands a trial on all counts and causes by struck jury.

By: /s/ *Sean J. Bellew*
Sean J. Bellew (Bar ID No. 4072)
BELLEW LLC
2961 Centerville Road, Suite 302
Wilmington, DE 19808
T: (302) 353-4951
sjbellew@bellewllc.com

OF COUNSEL:

Christopher C. Frost (pro hac vice intended)
Elizabeth S. Pilcher (pro hac vice intended)
MAYNARD COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
F: (205) 254-1999
cfrost@maynardcooper.com
epilcher@maynardcooper.com

Dated: August 19th, 2022