## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | C.A. No. 22-1092-GBW |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, | |
| Defendant. | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. O'Connor (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE  19801
Phone: (302) 416-7082
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.oconnor@klgates.com

Dated: January 5, 2023                    *Counsel for Defendant*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................1

ARGUMENT.....................................................................................................................................2

I.      The Court Must Apply the Misstatement of Age Provision. ...............................................2

II.     The Adjusted Death Benefit Amount Must Be Calculated Based on the Formula in
        the Misstatement-of-Age Provision. ...................................................................................4

III.    The Maturity Date Cannot be Modified...............................................................................5

        A.      The misstatement-of-age provision does not allow for modification of the
                Maturity Dates. ......................................................................................................5

        B.      The Maturity Date of each Policy is clearly stated and not an ambiguous
                term. ........................................................................................................................5

        C.      Section 7702 does not require American General to modify the Maturity
                Dates. ......................................................................................................................7

        D.      Reformation does not permit modification of the Maturity Dates..........................9

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aarvig v. Aarvig*,
  248 N.J. Super. 181 (Ch. Div. 1991) ...................................................................................9

*Bank of Am., N.A. v. Westheimer*,
  2014 WL 809207 (D.N.J. Feb. 28, 2014) ...........................................................................10

*Flomerfelt v. Cardiello*,
  997 A.2d 991 (N.J. 2010)......................................................................................................3

*Fox v. State Farm Fire & Cas. Co.*,
  2021 WL 4398740 (D.N.J. Sept. 24, 2021) ........................................................................10

*Lee v. General Accident Ins. Co.*,
  337 N.J. Super. 509 (App. Div. 2001) ..................................................................................6

*Macysyn v. Hensler*,
  329 N.J. Super. 476 (App. Div. 2000) ..................................................................................8

*Messina v. New York Life Ins. Co.*,
  173 Miss. 378 (1935) ............................................................................................................3

*Nitkewicz v. Lincoln Life & Ann. Co. of N.Y.*,
  2021 WL 2784551 (S.D.N.Y. July 2, 2021) .........................................................................7

*Rosario v. Haywood*,
  351 N.J. Super. 521 (App. Div. 2002) ..................................................................................5

*Schor v. FMS Fin. Corp.*,
  357 N.J. Super. 185 (App. Div. 2002) ..................................................................................6

*Schuerger v. Farmers New World Life Ins. Co.*,
  2019 WL 13150018 (W.D. Tex. Oct. 31, 2019) ...................................................................3

*Simonetti v. Selective Ins. Co.*,
  372 N.J. Super. 421 (App. Div. 2004) .............................................................................6, 10

*Yang v. Farmers New World Life Ins. Co.*,
  898 F.3d 825 (8th Cir. 2018) ................................................................................................3

**Statutes**

26 U.S.C.A. § 7702(e)(1)(B) ......................................................................................................8

26 U.S.C.A. § 7702(g)(1), (2).....................................................................................................7

Internal Revenue Code § 7702.........................................................................................7, 8, 9, 10

Internal Revenue Code § 7702(a) ...........................................................................................7, 9

Internal Revenue Code § 7702(e) .................................................................................................8

Internal Revenue Code § 7702(g)(3) ...........................................................................................9

N.J.S.A. 17B:25-6......................................................................................................................4

N.Y. U.C.C. § 8-102(a)(14)(ii) ....................................................................................................1

**Other Authorities**

American Heritage Dictionary (5th ed. 2022),
  https://www.ahdictionary.com/word/search.html?q=deem; .......................................................8

https://www.dictionary.com/browse/deemed ...............................................................................8

Revenue Procedure 2010-28, 2010-34 I.R.B. 270 (2010) ............................................................8

4.02 SECTION 7702-"LIFE INSURANCE CONTRACT" DEFINED, 1999 WL
  1031895.........................................................................................................................7

2.02 THE STATUTORY DEFINITION OF "LIFE INSURANCE" FOR
  INCOME TAX PURPOSES-SECTION 7702, 1999 WL 1031869, 17 n.3 .............................9

Defendant, Wilmington Trust, N.A., as Securities Intermediary ("Securities Intermediary"),[1] submits this Reply in support of its Motion for Partial Judgment on the Pleadings on the Amended Complaint (the "Motion").

## INTRODUCTION

Although American General tries to overcome the Motion by conjuring issues of fact, the Motion presents a purely legal issue that the Court can and should resolve at this time: what is American General's payment obligation under the Policies?  The answer is plain from the face of the Policies.  Specifically, the first page of each Policy identifies the two potential payment obligations:

Scenario 1:   WE WILL PAY THE ***DEATH BENEFIT PROCEEDS*** to the Beneficiary ***if the Insured dies prior to the Maturity Date*** and while this policy is in force.

Scenario 2:   WE WILL PAY THE ***CASH SURRENDER VALUE*** of this policy to the Owner on the Maturity Date ***if the Insured is living on that date.***

ECF No. 26-1 at A-01; ECF No. 26-2 at B-01 (emphasis added).  Thus, American General must pay either the Death Benefit Proceeds, under Scenario 1, or the Cash Surrender Value, under Scenario 2—*depending on whether the Insured dies before or after the <u>Maturity Date</u>*.  American General argues that it is entitled to pay only the Cash Surrender Value under Scenario 2 because the insured misstated his age on each policy application.  American General's argument fails for two reasons:

*First*, the Policies' clear terms dictate what American General must do and pay in the event the insured has misstated his age on the policy application (the "misstatement-of-age provision").  ECF No. 26-1 at A-15; ECF No. 26-2 at B-15.  This provision requires American General to pay

---

[1] At all times, Wilmington Trust, N.A. acts solely as the Securities Intermediary for the benefit of Geronta Funding ("Geronta"), a Delaware statutory trust, and does not act in its individual capacity. *See, e.g.,* N.Y. U.C.C. § 8-102(a)(14)(ii).

*the Death Benefit Proceeds* in an adjusted amount, which is to be determined pursuant to a specific formula.  *Id.* Importantly, this provision does ***not*** contemplate (much less refer to) a change in the Maturity Date.

*Second*, per the plain terms of the Policies, Scenario 2 does not apply because the Insured was not living on the "Maturity Date" of each Policy.  It is undisputed that the Insured died on July 21, 2020.  ECF No. 26 ¶ 25. It is also undisputed that "Maturity Date" is *specifically defined* in each Policy as *November 7, 2021* and *February 20, 2022*, respectively.  ECF No. 26-1 at A-03; ECF No. 26-2 at B-03.  Because the Insured died before either of these dates, Scenario 2 is inapplicable.  American General nevertheless tries to force application of Scenario 2 by arguing it has a unilateral right to modify the Maturity Dates to a date before the Insured's death. But under the applicable law, neither American General, nor the Court, can change or rewrite the terms of the Policies, including the Maturity Dates.

For these reasons, as further explained herein, Securities Intermediary is entitled to partial judgment on Counts I, II, III, and IV.[2]

## ARGUMENT

### I.      The Court Must Apply the Misstatement of Age Provision.

American General's complaint is based on its position that the Insured misstated his age on the applications for the Policies.  ECF No. 26 ¶ 2 ("This case centers around a misstatement of the Insured's age in his Applications for the Policies.").   Assuming this to be true, the misstatement-of-age provision in each Policy squarely applies, and specifies what American General must do: "If the …age … of the Insured …has been misstated to Us, *We will adjust the*

---

[2] American General makes several unfounded assertions, including that the Policies owners made a "morbid bet that the Insured would die sooner rather than later."  Because these assertions are entirely irrelevant to resolution of the Motion, Securities Intermediary does not address them at this time.

*excess of the Death Benefit Amount…*"  ECF No. 26-1 at A-15; ECF No. 26-2 at B-15 (emphasis added).  Per the plain language of this provision, if the Insured has misstated his age, American General must pay the **death benefit proceeds in an adjusted amount**.  The provision does not contain any exceptions (such as where the Insured lives past the age of 100) and certainly does not provide for modifying any other provision of the Policies—including the Maturity Date provision. *See Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (court must enforce insurance policy as written).[3]

The *only* fact that is relevant to trigger application of the Misstatement of Age provision is that the Insured misstated his age on the policy applications.  For purposes of this Motion, Securities Intermediary does not dispute that fact.  ECF No. 37 at 5. As a result, a determination that the misstatement-of-age provision applies does not depend on any disputed fact or on a factual record to be developed through discovery.  The single, material fact is whether the Insured misstated his age—which, again, Securities Intermediary has assumed for this Motion. [4]

---

[3] Notably, the cases cited by American General (which are from other jurisdictions) actually *confirm* that the misstatement-of-age provision must be enforced according to its terms. *See, e.g., Schuerger v. Farmers New World Life Ins. Co.*, No. SA-18-CV-584-XR, 2019 WL 13150018, at *8 (W.D. Tex. Oct. 31, 2019) ("The terms of the Misstatement of Age provision apply whether the misstatement was intentional or unintentional and whether the mistake was known or unknown by any or both parties to the contract."); *Yang v. Farmers New World Life Ins. Co.*, 898 F.3d 825, 828 (8th Cir. 2018) (the Misstatement of Age provision "applies, without apparent exception, whenever the insured's age was misstated… Because the plain language of the misstatement-of-age clause admits of no exception, we may not "rewrite, modify, or limit its effect by a strained construction.").

[4] American General claims that the Policies' incontestability clause does not bar a misstatement-of-age defense because it is not contesting the Policies but seeking to enforce their terms. Securities Intermediary (on behalf of Geronta) is *also* seeking to enforce the Policies' terms— namely, the misstatement-of-age provision. And here too, the cases on which American General relies support Securities Intermediary's position and prevent American General from ignoring the misstatement-the-age provision. *See, e.g., Messina v. New York Life Ins. Co.,* 173 Miss. 378 (1935)("[the incontestability clause] cannot be used as a means of rewriting the contract by striking out of it other valid and unambiguous provisions governing the ultimate amount payable under the policy").

Because the misstatement-of-age provision requires American General to pay an adjusted Death Benefit Amount, Count I—which seeks a declaration that American General satisfies its payment obligation by paying the Cash Surrender Value (an amount that is not relevant to the misstatement-of-age provision and that is far less than the adjusted Death Benefit Amount)—fails as a matter of law.

## II.     The Adjusted Death Benefit Amount Must Be Calculated Based on the Formula in the Misstatement-of-Age Provision.

Once the Court determines the misstatement-of-age provision applies, the adjusted Death Benefit Amount must be calculated pursuant to the formula specified in that provision:

> we will adjust the excess of the Death Benefit Amount over the Accumulation Value on the date of death to that which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate…

*See* ECF No. 26-1 at A-15; ECF No. 26-3 at B-15.

In Count II, American General alleges the "Death Benefit Amount" that would have been purchased by the premiums paid at the correct cost of insurance is zero because "the 1980 CSO Mortality Tables it uses do not provide for ages beyond 100." ECF No. 26 ¶ 41.  But the age that is relevant to calculating the adjusted Death Benefit Amount under the misstatement-of-age provision is the age at the time of issuance, not the age at the time of death.  Both New Jersey law and the Policies require an insurer to pay the death benefits that correspond to the amount of coverage *that would have been purchased* by the premiums paid based on the correct age *at the time of issuance*—in this case, 86 years old instead of 84 years old.  *See* ECF No. 26-1 at A-15; ECF No. 26-3 at B-15 ("By age, we mean age nearest birthday *as of the Date of Issue*.") (emphasis added); N.J.S.A. 17B:25-6 (requiring misstatement of age provision that provides that "any amount payable or benefit accruing under the policy shall be such as the premium would have purchased at the correct age or ages").  American General cannot claim that the death benefits are

zero, because it would not have issued the Policies had it known the Insured would survive beyond 100 years of age.

For this reason, Count II—which seeks a declaration that the amount due under the misstatement-of provision is zero—also fails as a matter law.

**III.    The Maturity Date Cannot be Modified.**

The misstatement-of-age provision answers the question of American General's payment obligation to Securities Intermediary (on behalf of Geronta). *This ends the inquiry.* To avoid application of the provision, however, American General argues this case falls within Scenario 2 because the Maturity Dates should be modified. As explained below, there is no basis to modify the Maturity Dates.

> **A.    The misstatement-of-age provision does not allow for modification of the Maturity Dates.**

American General argues that because the Insured misstated his age, it can unilaterally modify the Maturity Dates to the date the Insured reached age 100. But the misstatement-of-age provision does not allow this. In fact, the provision does not even mention the Maturity Dates. It only allows American General to adjust the death benefit amount that must be paid. The Maturity Dates, and the Insured's age at the time of death, are irrelevant to the calculation under the misstatement-of-age provision. *See* Section I *Supra*.

> **B.    The Maturity Date of each Policy is clearly stated and not an ambiguous term.**

American General also argues that the Maturity Dates are ambiguous because they are supposed to correspond to the date the Insured attains age 100. But the Maturity Dates in the Policies are defined as *specific dates, with no qualification or exception*.

Under New Jersey law, an insurance policy is not ambiguous merely because two conflicting interpretations have been offered by the litigants. *Rosario v. Haywood*, 351 N.J. Super.

521, 530–531 (App. Div. 2002). A *genuine* ambiguity exists only when the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. General Accident Ins. Co.*, 337 N.J. Super. 509, 513 (App. Div. 2001). "A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning." *Schor v. FMS Fin. Corp.*, 357 N.J. Super. 185, 191–92 (App. Div. 2002).

American General incorrectly argues that New Jersey law permits the Court to look beyond the Policies to determine their "true meaning." But this principle applies only where "the context of the document itself and the transaction to which it pertains" causes doubt as to the meaning of the language. *Schor*, 357 N.J. Super. at 191–92. Even then, New Jersey law is clear that extrinsic evidence cannot be used for the purpose of "modifying or enlarging or curtailing its terms." *Id.*

Here, there is nothing in the Policies that casts doubt on the meaning of the Maturity Dates, which are specific dates. Period. They are not defined by reference to the Insured's age at policy issuance, nor by reference to the date the Insured reaches age 100. Even if American General intended for the Maturity Dates to be defined in one of those ways, the Court must give effect to the plain meaning of the Policies—the specific dates—and cannot rewrite those dates to reflect what American General alleged subjective intent. *Id.* at 192 ("We have no right to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently.").[5]

---

[5] Even if the Maturity Dates were subject to two reasonable interpretations (they are not), the Court must choose the interpretation that favors the insured. *See Simonetti v. Selective Ins. Co.*, 372 N.J. Super. 421, 428–29 (App. Div. 2004).

C.      **Section 7702 does not require American General to modify the Maturity Dates.**

American General next argues it has a right to change the Maturity Dates under the reservation-of-rights provision in the Policies.  That provision allows American General to modify the Policy if the modification "is necessary to make any change[]…*required* by the Internal Revenue Code or by any other application law."  ECF No. 26-1 at A-15; ECF No. 26-2 at B-15 (emphasis added).  But section 7702 of the Internal Revenue Code, which defines a "life insurance contract" *for purposes of income taxation only*, does not *require* American General to change or re-write the Policies, including the Maturity Dates.

*S*ection 7702 does not impose an obligation on an insurer to ensure a policy meets the definition of a "life insurance contract."[6]  To the contrary, section 7702 contemplates that a policy may not meet this definition, and it provides how to treat such a policy. *See* 26 U.S.C.A. § 7702(g)(1), (2) (explaining how to treat income on contract and amount paid on death of insured for policies that do not meet section 7702(a)).  In sum, a policy that fails to meet section 7702(a) loses certain favorable tax treatment. *See id.*; *See also* 4.02 SECTION 7702—"LIFE INSURANCE CONTRACT" DEFINED, 1999 WL 1031895, *1 ("A contract must meet the statutory definition of 'life insurance contract' contained in Section 7702 for increases in its cash values to escape current income taxation and for death benefits to be receivable *totally* without federal income tax liability.") (emphasis added).

---

[6] *Nitkewicz v. Lincoln Life & Ann. Co. of N.Y.,* No. 20 CIV. 6805 (JPC), 2021 WL 2784551, at *3 n.3 (S.D.N.Y. July 2, 2021), which American General cites, says nothing about an insurer's "duty" or "obligation" to comply with section 7702.  The discussion of section 7702 is relegated to a brief footnote that merely states that a policy's compliance with section 7702 allows it to *qualify for federal income tax exclusion*.

Even if a policy matures after the insured reaches age 100, section 7702(e) "*deems*" the policy to have matured within the 95-100 age range.[7] 26 U.S.C.A. § 7702(e)(1)(B) ("*the maturity date...shall be deemed to be* no earlier than the day on which the insured attains age 95, and no later than the day on which the insured attains age 100") (emphasis added).  The word "deems" must be given its plain meaning, which can be discerned by reference to dictionary definitions. *See Macysyn v. Hensler*, 329 N.J. Super. 476, 485 (App. Div. 2000).  The American Heritage Dictionary defines the word "deem" as "to regard as." The American Heritage Dictionary (5th ed. 2022),         https://www.ahdictionary.com/word/search.html?q=deem;         *see         also* https://www.dictionary.com/browse/deemed (defining "deemed" as "assumed or judge").

Thus, if a policy matures after the insured reaches age 100, section 7702 will (***for tax purposes) regard the policy as maturing*** (i.e., will *assume the policy matures*) no later than when the insured reached 100 years old.[8] American General conveniently ignores the words "shall deem" in its quotation of section 7702(e).  Under New Jersey law, however, the Court must give effect to every word in the statute.  *See Macysyn*, 329 N.J. Super. at 485.

Simply put, section 7702 does not "require" American General to change the Maturity Dates and, as a result, it cannot unilaterally modify the Maturity Dates.  Notably, American

---

[7] American General argues that I.R.S. Notice 2009-47 does not apply here. Although Notice 2009-47 was a request for public comment, the proposed safe harbor discussed therein became official in Revenue Procedure 2010-28, 2010-34 I.R.B. 270 (2010).  Regardless of its applicability, however, the Notice and the Revenue Procedure both confirm that the word "deem" in section 7702(e) is construed consistent with its plain meaning—that is, for tax purposes under section 7702 (other than for applying the cash value corridor), a policy is "assumed" to mature by the time the insured attains age 100, even if the contract specifies a later maturity date.  *See* Rev. Proc. 2010-28, 2010-34 I.R.B. 270 (2010).

[8] The same is true if the insured dies, and thus the policy matures, before the insured reaches age 95.  In that case, section 7702 will assume that the policy matures no earlier than when the insured would have reached age 95.

General does not cite a single case, and Securities Intermediary has not found one, where a court changed the maturity date defined in a policy (and, in turn, has denied death benefits) on the basis of section 7702.[9]

Count III—which seeks a declaration that the Maturity Date provisions must modify to comply with section 7702—therefore fails as a matter of law.[10]

### D.    Reformation does not permit modification of the Maturity Dates.

American General's last-ditch attempt to modify the Maturity Dates is its claim for reformation.  While reformation can be used to conform a written document to what the parties agreed, it is ***not*** a way to *change* what the parties agreed to.  *Aarvig v. Aarvig*, 248 N.J. Super. 181, 185 (Ch. Div. 1991) ("[a] reformation of a contract is not a modification.").

Putting aside that American General has not (and cannot) establish the requisite mutual mistake or unilateral mistake to justify reformation, Count IV for reformation fails as a matter of law.  This is because the Policies ***expressly contemplate*** the alleged "mistake" that occurred, and they specifically provide what the parties can do and which terms of the Policies—the Death Benefit Amount—can be adjusted to account for this mistake. If the Court were to reform the Policies to change the Maturity Dates, it would not only be changing

---

[9] Section 7702 benefits the policyowner/beneficiary by providing favorable tax treatment to "life insurance contracts" and allowing the beneficiary to enjoy the ***full*** death benefits without tax liability.  By contrast, American General attempts to use section 7702 (through the reservation-of rights provision in the Policies) to ***deny*** the death benefits altogether, thereby harming the beneficiary.  American General's position on section 7702 turns its purpose on its head.

[10] American General tries to dismiss the import of section 7702(g)(3), which confirms that a life insurance policy continues to be a life insurance policy notwithstanding that it may not meet the definition under section 7702(a) for tax purposes.  *See* 2.02 THE STATUTORY DEFINITION OF "LIFE INSURANCE" FOR INCOME TAX PURPOSES—SECTION 7702, 1999 WL 1031869, 17 n.3 ("A contract considered life insurance under state law may be treated as life insurance under federal law even if it does not meet the strict rules of section 7702, ***but such a policy will not be eligible for either the income tax free treatment of cash value buildups or the income tax free receipt of death benefits***.") (citing IRC § 7702(g)(3)) (emphasis added).

the agreed-upon Maturity Dates, but would also be disregarding the misstatement-of-age provision. New Jersey law does not allow this. *Simonetti*, 372 N.J. Super. at 428 ("the court must enforce the contract as it is written"); *see also Bank of Am., N.A. v. Westheimer*, No. CIV.A. 12-7080 JAP, 2014 WL 809207, at *6 (D.N.J. Feb. 28, 2014) (dismissing reformation claim to increase loan amount based on allegedly "mistaken" construction cost estimate *where the loan agreement clearly contemplated that actual construction cost could be higher and stated that defendant bore the responsibility for additional costs in excess of the estimate*).[11]

For these reasons, Count IV also fails as a matter of law.

## CONCLUSION

Securities Intermediary is entitled to partial judgment on the pleadings: (1) On Count I because the misstatement-of-age provision requires payment of an adjusted Death Benefit Amount, not the Cash Surrender Value; (2) on Count II because the misstatement-of-age provision does not allow American General to pay zero death benefits;[12] (3) on Count III because section 7702 does not require American General to change the Maturity Dates; and (4) on Count IV because the Court cannot use reformation to change the terms of the Policies that expressly provide what American General must do in the event of a "mistake" in the Insured's age. [13]

---

[11] Securities Intermediary did not argue that reformation requires a prior "*written*" contract. Securities Intermediary argued, consistent with New Jersey law, that there must be a prior agreement that the written contract does not accurately reflect. There is no such prior agreement here. *See Fox v. State Farm Fire & Cas. Co.*, No. 220CV18131BRMESK, 2021 WL 4398740, at *5 (D.N.J. Sept. 24, 2021).

[12] Counts I and II of Securities Intermediary's Counterclaim are breach-of-contract claims based on American General's failure to comply with the misstatement-of-age provision in each Policy. Thus, even if the Court enters judgment on *American General*'s Count II, the Court will be able to determine the amounts owed to Securities Intermediary (on behalf of Geronta) under the Counterclaim.

[13] For purposes of this Motion only, and to avoid the risk of creating an issue of fact, Securities Intermediary withdraws the argument regarding its bona fide purchaser defense.

Dated:  January 5, 2023

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. O'Connor (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE  19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.oconnor@klgates.com

*Counsel for Defendant*