IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST NATIONAL ASSOCIATION,<br><br>Defendant. | Civil Action No. 22-1092-GBW |

## **MEMORANDUM ORDER**

Pending before the Court is Defendant Wilmington Trust, N.A.'s ("Defendant") Motion for Partial Judgment on the Pleadings on the Amended Complaint. D.I. 36. Plaintiff American General Life Insurance Company ("Plaintiff") opposes the Motion. D.I. 39. Having reviewed the Motion and all relevant briefing, the Court finds that Defendant's Motion for Partial Judgment on the Pleadings is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court grants Judgment on the Pleadings in favor of Defendant on Counts I and IV of the Amended Complaint and otherwise denies Defendant's motion.

### I. BACKGROUND

In 2005 and 2006, Plaintiff issued two life insurance policies (collectively, the "Policies") on the life of Meyer Magid (the "Insured"). The first policy, Policy No. UM0033913L (the "13L Policy"), had an Issue Date of November 7, 2005, and a Maturity Date of November 7, 2021. *Id.* ¶¶ 16, 22. Similarly, the second policy, Policy No. UM0023684L (the "84L Policy"), had an Issue Date of February 2, 2006, and a Maturity Date of February 20, 2022. *Id.*, ¶¶ 17, 24. The

Policies insured the Insured's life for a specified death benefit of $5,000,000, each. *Id.*, ¶¶ 13, 17. Pursuant to the Policies, if the Insured died prior to the Maturity Date, Plaintiff would pay the specified Death Benefit to the Policies' beneficiaries. *Id.*, ¶ 19. If, however, the Insured lived beyond the Maturity Date of each policy, Plaintiff would instead be obligated to pay the Cash Surrender Value, an amount less than the specified Death Benefit, following the Insured's death. *Id.* Plaintiff alleges that the Maturity Dates were intentionally set to expire sixteen years after each policy's Date of Issue so that the Policies would mature when the Insured attained the age of 100. *Id.*, ¶ 20.

Defendant, as Securities Intermediary, is the owner and beneficiary of the Policies. D.I. 37 at 1. Following the death of the Insured on July 21, 2020, Defendant filed a claim to collect from Plaintiff the death benefits due under the Policies. *Id.* at 3. Plaintiff alleges that, while it was processing Defendant's claim, Plaintiff learned that the Insured misstated his age when he applied for the Policies by representing that he was born in 1921, when in fact he was born in 1919.[1] D.I. 26, ¶ 15. According to Plaintiff, applying the Insured's correct age would mean that the Insured was over 100 on the date of his death. *Id.*, ¶ 3. Thus, Plaintiff maintains that the Maturity Date for the Policies should be amended to reflect the Insured's true age. *Id.*, ¶¶ 5, 29 (noting that Plaintiff sought to "adjust[] the Maturity Date for the 13L Policy to November 7, 2019, and it adjusted the Maturity Date for the 84L Policy to February 20, 2020"). Plaintiff contends that, under the amended Maturity Dates, Plaintiff was only obligated to pay Defendant the Cash Surrender Value for each policy. Therefore, on April 22, 2021, Plaintiff sought to satisfy its obligations under the Policies by paying Defendant $174,878.23, the Cash Surrender

---

[1] Defendant disputes Plaintiff's claim that the Insured's age is misstated on the Policies. D.I. 37 at 1.

Case 1:22-cv-01092-GBW Document 47 Filed 06/13/24 Page 3 of 14 PageID #: 602

Value for the 13L Policy, and $134,138.26, the Cash Surrender Value for the 84L Policy. *Id.*, ¶ 30.

Defendant contends that the "Cash Surrender Value" paid to Defendant on April 22 "is less than $200,000" the amount Plaintiff owed "on each policy." D.I. 37 at 1. According to Defendant, even if it is assumed that the Insured misstated his age, "the terms of the Policies clearly provide that American General must pay Securities Intermediary an adjusted death benefit amount pursuant to a specific formula agreed to and set forth in the misstatement-of-age provision in each Policy." *Id.* at 1-2. Specifically, Defendant notes that the Policies contain Misstatement of Age provisions, which hold that:

> If the: age or gender of the Insured . . . has been misstated to Us, we will adjust the excess of the Death Benefit Amount over the Accumulation Value on the date of death to that which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate. By age, We mean age nearest birthday as of the Date of Issue.

D.I. 26, Ex. A at 15; D.I. 26, Ex. B at 15. Defendant maintains that neither the Misstatement of Age provisions, "nor any other [provisions] in the Policies, permits [Plaintiff] to unilaterally modify the maturity dates of each Policy." D.I. 37 at 2.

On August 19, 2022, Plaintiff filed this action to obtain a declaration of the parties' rights and obligations under the Policies. D.I. 1, D.I. 26. Shortly thereafter, on November 17, 2023, Defendant filed the present Motion for Partial Judgment on the Pleadings challenging Counts I to IV of the Amended Complaint (D.I. 26). D.I. 36.

## II. LEGAL STANDARD

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial."

3

FED. R. CIV. P. 12(c). When evaluating a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

**III.   DISCUSSION**

   A.   *Plaintiff Cannot Adjust the Maturity Dates Based on the Insured's "True" Age.*

In Count I of the Amended Complaint, Plaintiff seeks a declaratory judgment that it satisfied its liability under the Policies by issuing Defendant the Cash Surrender Value under each policy on April 22, 2021. D.I. 26 at 7. In support of this claim, Plaintiff contends that, "[b]ased on the Insured's true age of 86 when the policies were issued, the 13L Policy's correct Maturity Date is November 7, 2019, and the 84L Policy's correct Maturity Date is February 20, 2020." *Id.*, ¶ 32. Because the Insured was alive on each of the "correct Maturity Dates," Plaintiff contends that the Policies obligated Plaintiff to pay Defendant the Cash Surrender Value

4

of each policy, which Plaintiff maintains it satisfied by paying Defendant $174,878.23 for the 13L Policy, and $134,138.26 for the 84L Policy. *Id.*, ¶ 33.

According to Defendant, "even if the Insured's age had been misstated on the policy applications," Count I fails as a matter of law because "[Plaintiff] cannot change or amend the Maturity Dates." D.I. 37 at 7. For the following reasons, the Court agrees.

As Plaintiff concedes, the Policies each contain a Misstatement of Age provision which describes how the Death Benefit Amount under each policy will be adjusted if the age of the Insured was misstated when the policy was issued. D.I. 49 at 4-5. The Misstatement of Age provisions do not permit Plaintiff to amend the Policies' Maturity Dates. Rather, as the Court discusses in more detail below, the provisions provide that, "[i]f the[] age . . . of the Insured . . . has been misstated to [Plaintiff], [Plaintiff] **will adjust the excess of the Death Penalty Amount**" as outlined by the Misstatement of Age provisions. D.I. 26-1 at 18; D.I. 26-2 at 18 (emphasis added).

The Maturity Dates of each of the Policies, on the other hand, are clearly stated as November 7, 2021 and February 20, 2022, respectively. *Id.*, ¶¶ 23-24. While Plaintiff seeks to introduce "their *actual* Maturity Dates," which Plaintiff contends are "calculated from the *true* age of the Insured," the Policies explicitly hold that the death penalty amount, not the Maturity Date, will be adjusted in the case that a mistake in the Insured's age is discovered. *See* D.I. 39 at 7 (emphasis in original). As Defendant contends, New Jersey law mandates that "[a]n insurance policy," like any other contract, "be enforced *as written* when its terms are clear in order that the expectations of the parties [] be fulfilled." D.I. 37 at 7 (citing *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010)) (emphasis in original); *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) ("If the policy language is clear, the policy should be

5

interpreted as written, but if the policy is ambiguous, the policy will be construed in favor of the insured."). The Court, in interpreting a policy's language, must "afford each word in the contract its plain and ordinary meaning." *Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 625 F. Supp. 3d 309, 328 (D.N.J. 2022), *motion to certify appeal denied*, 2023 WL 113959 (D.N.J. Jan. 5, 2023). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." *Special Police Org. of New Jersey v. City of Newark*, No. A-4168-19, 2022 WL 2912038, at *11 (N.J. Super. Ct. App. Div. July 25, 2022).

Here, the Maturity Date for each policy is clearly fixed and, absent modifications required "by [] applicable law . . . to continue treatment of th[e] [Policies] as life insurance,"[2] the Policies do not permit Plaintiff to amend or correct the agreed-upon Maturity Dates. Thus, while Plaintiff claims that Count I merely "seek[s] to enforce [the Policies'] terms under the true facts," the Court cannot allow Plaintiff to introduce extrinsic evidence to counter the clear and unambiguous terms of the Misstatement of Age provisions.[3] D.I. 39 at 10.

Because the Court finds that Plaintiff is not entitled under the Misstatement of Age provisions to adjust each policy's Maturity Date, the Court agrees with Defendant that "there can be no dispute that the Insured died 'prior to the Maturity Date' (the Insured died on July 21, 2020 and the Maturity Dates for each Policy are November 7, 2021 and February 20, 2022,

---

[2] Count II does not allege a modification that is required under "applicable law." *But see* D.I. 26, Count III.

[3] Despite Plaintiff's claims otherwise, the Policies' incontestability clauses are irrelevant here given that Plaintiff is not accused of contesting the Policies. D.I. 41, n.4; *Cf. Equitable Life Assur. Soc. of U.S. v. Rothstein*, 195 A. 723, 724-25 (N.J. Ch. 1937) (where defendant claimed that "the incontestability clause of the policy prevent[ed] th[e] court from making any decree" that would permit plaintiff to reform a policy of insurance). Rather, Defendant argues that Plaintiff cannot ignore the Misstatement of Age provisions. D.I. 41, n.4. According to Defendant, by attempting to amend the Maturity Dates, Plaintiff takes actions that are antithetical to the terms of the Misstatement of Age provisions, not the Policies' incontestability clauses. *Id.* The Court agrees.

respectively)." D.I. 37 at 8. Plaintiff is therefore obligated under each policy to pay the Death Benefit Proceeds according to the terms of the Misstatement of Age provisions, and Plaintiff cannot claim that it satisfied this obligation by instead "correcting" the Maturity Date of each policy and issuing the Cash Surrender Value. Accordingly, Defendant's Motion for Judgment on the Pleadings on Count I is **GRANTED**.

      B.    *Defendant is not entitled to Judgment on the Pleadings as to Count II.*

In Count II of the Amended Complaint, Plaintiff contends that the Misstatement of Age provision of each policy instructs that the Insured's Death Benefit Amount is adjusted to zero. D.I. 26, ¶ 43. According to Plaintiff, "[b]ecause the application of the Policies' Misstatement of Age provisions require adjusting the Death Benefit Amount to zero, recovery under the Policies is limited to the Cash Surrender Value, plus a refund of any post-age-adjusted premium payments." *Id.* As Plaintiff paid the Cash Surrender Value for each policy on April 22, 2021, Plaintiff seeks a declaratory judgment that it has satisfied its obligations under the Misstatement of Age provisions. *Id.*, ¶¶ 44-46.

Defendant responds that "Plaintiff's position is incorrect under both New Jersey insurance law and contract law." D.I. 37 at 9. According to Defendant, Plaintiff's claim that the Death Benefit Amount can be adjusted to zero violates New Jersey Statutes section 17B:25–6, which mandates that all life insurance policies contain a provision outlining what the insurer must pay under a policy in the event the insured's age has been misstated. *Id.*; *see also* N.J.S.A. 17B:26-6 ("There shall be a provision that if the age of the insured or of any other person whose age is considered in determining the premium or benefit has been misstated, any amount payable or benefit accruing under the policy shall be such as the premium would have purchased at the correct age or ages."). By requiring that the insurer pay the amount payable under the policy as

7

the premium that "would have [been] purchased at the correct age," Defendant contends that section 17B:25–6 prohibits an insurer from refusing to pay death benefits because the insured misstated his or her age. D.I. 37 at 10.

Defendant also argues that Plaintiff's attempt to adjust the Death Benefit Amount to zero is contrary to the Misstatement of Age provisions in the Policies. *Id.* According to Defendant, the Misstatement of Age provisions unambiguously require Plaintiff to make an adjusted death benefit payment. *Id.* at 11. Defendant contends that this payment "is the sole *and* exclusive remedy available to [Plaintiff] under the Policies if an insured misstated his age." *Id.* Thus, Defendant argues that Plaintiff would violate the Misstatement of Age provisions if it "ma[de] any adjustment that is different or less than the adjusted death benefit that results from the formula specifically agreed to" pursuant to the Misstatement of Age provisions of the Policies. *Id.*

While the Court agrees with Defendant that Plaintiff must calculate the adjusted death benefit for each Policy according to the terms of the Misstatement of Age provisions, the Court cannot find, as a matter of law and based solely on the pleadings, that application of the provisions' terms would not result in a Death Benefit Amount of zero. Indeed, Plaintiff argues that the Death Benefit Amount is zero because "the 1980 CSO Mortality Tables it uses do not provide for ages beyond 100." D.I. 26, ¶ 41. In making this argument, Plaintiff seeks to enforce the Misstatement of Age provisions under its interpretation of the clause. Defendant, on the other hand, challenges Plaintiff's interpretation, arguing instead that "the age that is relevant to calculating the adjusted Death Benefit Amount under the [M]isstatement-of-[A]ge provision is the age at the time of issuance, not the age at the time of death." D.I. 41 at 4. Given their competing interpretations of the Misstatement of Age provisions and their application, the Court

8

agrees with Plaintiff that "'the amount of the Adjusted Death Benefit Proceeds' [is] an 'issue remaining' in the case," and each party will be required to prove their adjustment figure pursuant to the formula specified under the Misstatement of Age provisions. D.I. 39 at 11 (internal citations omitted). Thus, Defendant is not entitled to Judgment on the Pleadings as to Count II.

In holding that Defendant is not entitled to Judgment on the Pleadings as to Count II, the Court expresses no opinion as to whether the adjusted Death Benefit Amount under each policy would be zero. Indeed, the Court agrees with Defendant that the Misstatement of Age provisions require an adjustment of the death payment amount to "that which would have been purchased" at the time of the Policies' issuance. D.I. 41 at 4. According to the Misstatement of Age provisions, this amount is further adjusted "by the Monthly Deduction *for the policy month of death* at the correct cost of issuance rate . . . ." D.I. 26-1 at 15; D.I. 26-2 at 15 (emphasis added). Whether the adjusted amount is ultimately calculated, as Plaintiff claims, to zero cannot be determined on the pleadings alone. Accordingly, Defendant's Motion for Judgment on the Pleadings as to Count II is **DENIED**.

    C.    *Defendant is not entitled to Judgment on the Pleadings as to Count III.*

In Count III of the Amended Complaint, Plaintiff alleges that it is entitled to modify the Maturity Dates of the Policies to comply with Internal Revenue Code § 7702. *Id.* at 10. Plaintiff contends that the Policies granted Plaintiff the unilateral authority to make such amendments by providing that the policy "may be modified by [Plaintiff] . . . as required by the Internal Revenue Code or by any other applicable law . . . in order to continue treatment of this policy as life insurance." *Id.*, ¶ 49. According to Plaintiff, "for this particular type of insurance contract to

9

qualify as 'life insurance,'" under the Internal Revenue Code,[4] § 7702 requires that "'the maturity date. . . shall be deemed to be. . . no later than the date on which the insured attains age 100.'" *Id.*, ¶ 48. (citing 26 U.S.C. § 7702(e)(1)(B)). Thus, to ensure that the Policies meet the requirements for "life insurance" under § 7702, Plaintiff argues that it must "modify the Maturity Dates of the Policies to reflect the Insured's true age." D.I. 39 at 12.

Defendant, on the other hand, contends that § 7702 does not trigger Plaintiff's right to modify the Policies because the Policies permit Plaintiff to amend their terms only where the changes are "required by the Internal Revenue Code" to "continue treatment of th[e] [Policies] as life insurance." D.I. 37 at 13. According to Defendant, § 7702 merely "defines 'life insurance' for federal income tax purposes," meaning that a policy that qualified as "life insurance" under the section "enjoys certain tax benefits." *Id.* at 12. Thus, Defendant contends that § 7702 and its benefits "affect only the policy owner and/or beneficiary—not the carrier" and is of no consequence to the Policies' treatment as "life insurance" contracts under the remaining provisions of the Internal Revenue Code. *Id.* at 12-13 (arguing that "there is nothing about the Policies' compliance or noncompliance with section 7702 that would require or permit American General to make a 'modification' in order to 'continue treatment of th[e] [Policies] as life insurance'").

At this stage, however, the Court must view all allegations in the Amended Complaint as true and can award judgment on the pleadings only if Defendant "clearly establishes that no

---

[4] Whether § 7702's definition of "life insurance" applies broadly to the Internal Revenue Code is disputed by Defendant. According to Defendant, the definition applies only to § 7702, given that "section 7702(g)(3) provides that if any contract 'which is a life insurance contract under applicable law does not meet the definition of life insurance contract [under IRC 7702(a)], such contract shall, notwithstanding such failure, be treated as an insurance contract for purposes of this title.'" D.I. 37 at 12 (citing 26 U.S.C. § 7702(g)(3)).

10

material issue of fact remains to be resolved . . . ." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). Because the parties dispute whether there existed "a need to ensure that the Policies comply with § 7702," the Court finds that issues of fact and law remain that preclude the Court from granting judgment on the pleadings. Accordingly, Defendant's Motion for Judgment on the Pleadings as to Count III of the Amended Complaint is **DENIED**.

        D.    *Plaintiff is not entitled to reform the Policies under claims of Mutual or Unilateral Mistake.*

In Count IV, Plaintiff seeks to reform the February 20, 2022 Maturity Date in the 84L Policy and the November 7, 2021 Maturity Date in the 13L Policy because "[t]he true intention and agreement of the parties was the Policies would mature when the Insured attained the age of 100, which relates to a material feature of the Policies." D.I. 26, ¶¶ 57-59. According to Plaintiff, "[t]hrough a mutual mistake of the parties—or, alternatively, a mistake of American General, coupled with the other party's knowing silence—" the Policies were executed with Maturity Dates that "do not express the[ir] true intention." *Id.*, ¶ 59. Thus, Plaintiff claims that "[r]eforming the Policies to correctly reflect the true age of the Insured and agreement of the parties would not deprive Wilmington Trust of anything that it would have received had the Policies reflected the Insured's true age." *Id.*, ¶ 60.

Plaintiff, however, is not entitled to seek a reformation claim based on a theory of mutual mistake because, as Defendant notes, "the Policies expressly contemplate the possibility of a mistake in the insured's age and state what must be done in that case: American General must adjust the death benefits as provided in the misstatement-of-age provision." D.I. 37 at 15. Mutual mistake, on the other hand, exists only when "both parties were laboring under the same misapprehension as to a particular essential fact." *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 560 A.2d 655, 659 (N.J.1989). Thus, "to state a claim for reformation based on mutual mistake"

11

under New Jersey Law, Plaintiff "must allege 'that the minds of the parties have met and reached a prior existing agreement, which the written document fails to express.'" *Gen. Motors LLC v. Englewood Auto Grp., LLC*, No. 2:13-CV-04666 WJM, 2014 WL 4441769, at *8 (D.N.J. Sept. 9, 2014) (internal citations omitted). Because the Policies "clearly contemplate" a mistake in the Insured's age, Plaintiff cannot allege a claim for reformation based on mutual mistake. *Id.*

Plaintiff is similarly not entitled to seek reformation under unilateral mistake. A claim for reformation based on unilateral mistake requires Plaintiff to "allege facts demonstrating both (1) a unilateral mistake and (2) either fraud or unconscionable conduct by the defendant." *Id.* Thus, such a claim must be supported by allegations that the Insured "engaged in unconscionable conduct during the contract's formation." *Id.* Further, Plaintiff must meet a "high order of proof" and present support that is "clear, cogent, and convincing." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 442 (D.N.J.), *aff'd*, 172 F.3d 859 (3d Cir. 1998) (citing *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F.Supp. 474, 485 (D.N.J.1995)). The Amended Complaint, however, is entirely devoid of any allegations that the Insured or his Irrevocable Trust engaged in fraud or unconscionable conduct "in order to procure the issuance of the [Policies]." *Cf. Heake v. Atl. Cas. Ins. Co.*, 15 N.J. 475, 482, 105 A.2d 526, 529 (1954) (allowing reformation where court found no "doubt that [the contracting party] was guilty of unconscionable conduct").

While Plaintiff alleges that the "other party" "both knew about the mistake and remained silent," the Court agrees with Defendant that "[s]ilence is not sufficient" to establish fraud. D.I. 37 at 18 (citing *Mac Naughton v. Harmelech*, No. 09-CV-5450 (KM)(MAH), 2016 WL 3771276, 2016 WL 3771276, at *11 (D.N.J. July 13, 2016), *aff'd*, 693 F. App'x 154 (3d Cir. 2017)) ("[T]he unilateral mistake doctrine requires fraud or unconscionable conduct."). Moreover, Plaintiff provides no basis for its claim that the Irrevocable Trust knew that the Insured's age was misstated.

Because Plaintiff has failed to plead a unilateral mistake accompanied by fraud, Plaintiff is not entitled to proceed on its claim for reformation under a theory of unilateral mistake. *See Pedrick v. Roten*, No. CIV.A. 11-1221-SRF, 2013 WL 351667, at *8 (D. Del. Jan. 29, 2013) (granting Judgment on the Pleadings where party failed to allege "unilateral mistake accompanied by fraud").

Accordingly, Defendants' Motion for Judgment on the Pleadings as to Count IV is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is GRANTED-IN-PART and DENIED-IN-PART as follows.

\* \* \*

WHEREFORE, at Wilmington this 13th day of June, 2024, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings (D.I. 36) is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

1. Defendant's Motion for Partial Judgment on the Pleadings as to Count I of the Amended Complaint is **GRANTED**;

2. Defendant's Motion for Partial Judgment on the Pleadings as to Count II of the Amended Complaint is **DENIED**;

3. Defendant's Motion for Partial Judgment on the Pleadings as to Count III of the Amended Complaint is **DENIED**; and

4. Defendant's Motion for Partial Judgment on the Pleadings as to Count IV of the Amended Complaint is **GRANTED**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

14