## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | C.A. No. 22-1092-GBW |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, | |
| Defendant. | |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, | |
| Defendant/Counter-Plaintiff, | |
| v. | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | |
| Plaintiff/Counter-Defendant. | |

## DEFENDANT/COUNTER-PLAINTIFF'S OPENING BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. Hunt (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7082
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.hunt@klgates.com

Dated: April 11, 2025

*Counsel for Defendant*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

PROCEDURAL BACKGROUND....................................................................................... 3

    A.    The Pleadings ................................................................................................ 3

    B.    Court's Grant of Partial Judgment on the Pleadings................................ 4

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT ...................................................................................................................... 5

I.    AMERICAN GENERAL FAILED TO COMPLY WITH THE MISSTATEMENT-OF-AGE PROVISION AND THUS BREACHED THE POLICIES. ................................................................................................................ 5

    A.    New Jersey law mandates a misstatement-of-age provision that requires an insurer to pay an adjusted death benefit if the insured's age was misstated. .......... 6

    B.    Consistent with New Jersey law, American General included a provision in the Policies that requires it to pay an adjusted death benefit amount in the event of a misstatement of age. ...................................................... 6

    C.    In determining the adjusted death benefit amount, and as already ordered by the Court, American General must follow the formula set forth in the provision, which results in at least $ 3.9 million for each Policy. ......................... 7

II.    SECTION 7702 OF THE INTERNAL REVENUE CODE DOES NOT PERMIT—MUCH LESS REQUIRE—AMERICAN GENERAL TO CHANGE THE MATURITY DATE AND THEREBY TERMINATE THE POLICIES. ................. 8

    A.    Section 7702 affects only the tax treatment of life insurance policies. ................. 8

    B.    Because Section 7702 does not require a change to the Policies' Maturity Dates, American General cannot modify the Policies. ......................................... 11

CONCLUSION.................................................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bickling v. Kent Gen. Hosp., Inc.*,
  872 F. Supp. 1299 (D. Del. 1994)..................................................................5

*Brown v. C.I.R*,
  101 T.C.M. (CCH) 1374 (T.C. 2011), *aff'd sub nom. Brown v. Comm'r*, 693
  F.3d 765 (7th Cir. 2012) ................................................................................8

*Continental Ins. Co. v. Bodie*,
  682 F.2d 436 (3d Cir.1982)............................................................................5

*Flomerfelt v. Cardiello*,
  997 A.2d 991 (N.J. 2010)..............................................................................11

*Podobnik v. U.S. Postal Serv.*,
  409 F.3d 584 (3d Cir. 2005)............................................................................5

*In re Tyler*,
  No. 03-13597-JMD, 2004 WL 903826 (Bankr. D.N.H. Apr. 21, 2004) ...............................11

*Webber v. Comm'r*,
  144 T.C. 324 (2015)..................................................................................8, 9

**Statutes**

26 U.S.C. § 7702..........................................................................................9, 10, 11

Internal Revenue Code Section 7702................................................................ *passim*

N.J.S.A. 17B:25-6.............................................................................................6

N.Y. U.C.C. § 8-102(a)(14)(ii) ...............................................................................1

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................5

ii

Defendant, Wilmington Trust, N.A., as Securities Intermediary ("Securities Intermediary"),[1] by and through its counsel, submits this Motion for Partial Summary Judgment on Counts I and II of Securities Intermediary's Counterclaim to the First Amended Complaint (the "Counterclaim") filed by Plaintiff American General Life Insurance Company ("American General" or "Plaintiff"). Counts I and II of the Counterclaim assert claims for breach of contract based on American General's breach of its payment obligations under two life insurance policies it issued. This Motion seeks partial judgment as to American General's liability on Counts I and II because it is undisputed that American General did not pay the amounts it is contractually obligated to pay under the Policies.[2]

## INTRODUCTION

Securities Intermediary (on behalf of Geronta) is the owner and beneficiary of two life insurance policies issued by American General, each having a death benefit of $5 million (the "Policies"). American General has refused to pay the death benefit contractually due under the Policies, claiming the Insured misstated his age on the policy applications and, as a result, its payment obligation is limited to the cash surrender value of each Policy. *In other words, American General maintains it was required to pay only approximately $130,000 and $170,000, respectively, on each Policy, despite having collected more than $2.5 million in premium*

---

[1] At all times, Wilmington Trust, N.A. acts solely as the Securities Intermediary for the benefit of Geronta Funding ("Geronta"), a Delaware statutory trust, and does not act in its individual capacity. *See, e.g.,* N.Y. U.C.C. § 8-102(a)(14)(ii).

[2] While Securities Intermediary can demonstrate the approximate amount owed by American General on each Policy, *see* Argument section I.C, *infra*, American General has refused to produce basic policy information that would allow Securities Intermediary to arrive at an exact amount. For this reason, Securities Intermediary has been forced to move for partial summary judgment as to liability only.

**payments for each Policy.** Aside from being an absurd proposition, this violates both New Jersey law and the clear terms of the Policies.

As required by New Jersey law, the Policies contain a provision—the misstatement-of-age provision—dictating what American General must pay in the event the Insured's age was misstated (which Securities Intermediary assumes for purpose of this Motion *only*). This provision clearly states American General must pay the death benefit in an adjusted amount, which is calculated by following the formula set forth in the provision. The Court has already ruled as much: "[T]he Court agrees with Defendant that Plaintiff must calculate the adjusted death benefit for each Policy according to the terms of the Misstatement of Age provisions." D.E. 47 at 8 (emphasis added). Under the formula of the misstatement-of-age provision, American General indisputably owes at least $ 3.9 million on each Policy.

By disregarding the applicable formula and paying only the "cash surrender value" of each Policy, American General breached both Policies. Thus, Securities Intermediary is entitled to partial summary judgment on Counts I and II of the Counterclaim.

**BACKGROUND[3]**

Securities Intermediary is the owner and beneficiary of two life insurance policies issued by American General on the life of Meyer Magid (the "Insured"). SUMF ¶¶ 1, 10. The first policy, Policy No. UM0033913L (the "13L Policy"), was issued on November 7, 2005 and has a defined "Maturity Date" of November 7, 2021. *Id.* ¶¶ 3, 16. The second policy, Policy No. UM0023684L (the "84L Policy"), was issued on February 2, 2006 and has a defined "Maturity Date" of February 20, 2022. *Id.* ¶¶ 4, 16. Each Policy has a specified death benefit of $5,000,000.00. *Id.* ¶ 6. As

---

[3] Citations for the facts asserted herein are to the Statement of Undisputed Material Facts ("SUMF") attached hereto as Exhibit 1.

relevant here, the application for each Policy identified the Insured's birthday as August 22, 1921, making the Insured 84 years old at the time of the applications. *Id*. ¶ 7.

The Insured passed away on July 21, 2020. *Id*. ¶ 11. Securities Intermediary submitted a claim to American General on August 25, 2020 for the death benefit proceeds due under the Policies. *Id*. ¶ 12. On April 21, 2021, American General denied the claim. *Id*. ¶ 14. American General took the position the Insured's age had been misstated on the policy applications and the Insured was actually 100 years old when he died (instead of 98). *See id*. ¶¶ 15-16 & Ex. H. On this basis, American General unilaterally changed the Maturity Date of each Policy to two years earlier and claimed the Policies had terminated before the Insured's death. *See id.* Ex. H. Thus, American General paid only the "cash surrender value" of each Policy and not the death benefit amount. *Id*. ¶ 15 & Ex.H. American General then initiated this lawsuit seeking, among other things, a declaration it satisfied its payment obligation under the Policies.

## PROCEDURAL BACKGROUND

### A.    The Pleadings

American General's operative First Amended Complaint (the "Complaint") asserts five counts: Count I seeks a declaration that American General can modify the Maturity Dates to correspond with the true date the Insured attained 100 years, which in turn would allow American General to pay only the cash surrender value of the Policies. D.E. 26 at 7-8. Count II seeks a declaration that the misstatement-of-age provision in each Policy results in an adjusted death benefit amount of zero. *Id.* at 8-9. Count III seeks a declaration that Section 7702 of the Internal Revenue Code requires American General to modify the Maturity Dates. *Id*. at 10-11. Count IV asserts a claim for reformation of the Maturity Dates based on mutual or unilateral mistake of the Insured's age. *Id*. at 11. Count V asserts a claim for fraud in the presentment, alleging that

Securities Intermediary presented a "false" driver's license to American General as part of the claim for death benefits. *Id*. at 12.

In response to the Complaint, Securities Intermediary filed a Counterclaim with two counts for breach of contract—Count I for breach of the 13L Policy and Count II for breach of the 84L Policy. D.E. 27 at 25-27. The breach-of-contract claims allege that if the Insured's age was misstated on the applications, American General was required to pay an adjusted amount of Death Benefit Proceeds as provided for in the misstatement-of-age provision of the Policies. *See id.*

**B.    Court's Grant of Partial Judgment on the Pleadings**

On November 17, 2023, American General moved for partial judgment on the pleadings on Counts I through IV of the Complaint. D.E. 36, 37. On June 13, 2024, the Court granted the motion in part, entering judgment for Securities Intermediary on Counts I and IV.[4] D.E. 47. The Court's rulings on Count I is relevant to this Motion.

With respect to Count I of the Complaint, the Court found: "The Maturity Dates of each of the Policies…are clearly stated as November 7, 2021 and February 20, 2022, respectively. . . . [T]he Policies explicitly hold that the death [benefit] amount, not the Maturity Date, will be adjusted in the case that a mistake in the Insured's age is discovered." D.E. 47 at 5. The Court further explained that "absent modifications required by applicable law to continue treatment of the Policies as life insurance, the Policies do not permit Plaintiff to amend or correct the agreed-

_____

[4] The remaining claims in the Complaint are: Count II, which seeks a declaration that application of the misstatement-of-age provision results in an adjusted death benefit amount of zero; Count III, which seeks a declaration that American General was allowed to modify the Maturity Dates of the Policies under the Policies' "reservation of rights" provision because Section 7702 of the Internal Revenue Code requires the Policies' Maturity Dates to be the date the Insured attained age 100; and Count V, which asserts a claim for "fraud in the presentment" based on Securities Intermediary's submission of the Insured's driver's license showing his year of birth to be 1921. *See* D.E. 26.

4

upon Maturity Dates," even if the Insured was 100 years or older on the date of death. *Id.* at 6. The Court concluded, therefore, "there can be no dispute that the Insured died prior to the Maturity Date" and thus that American General "*is obligated to pay the Death Benefit Proceeds according to the terms of the Misstatement of Age Provisions*." *Id.* at 6-7 (emphasis added).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to demonstrate the absence of genuine issues of material fact. *Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1304 (D. Del. 1994). If the movant meets her initial burden, then the non-moving party must "counter with evidence that demonstrates a genuine issue of material fact." *Id.* The non-moving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

Where a case involves "no more than legal interpretation of an insurance policy, and most of the questions raised are legal, rather than factual in nature, . . . summary judgment is particularly appropriate." *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 439 (3d Cir.1982).

## ARGUMENT

## I.    AMERICAN GENERAL FAILED TO COMPLY WITH THE MISSTATEMENT-OF-AGE PROVISION AND THUS BREACHED THE POLICIES.

Securities Intermediary is entitled to partial summary judgment as to liability on Counts I and II of the Counterclaim because it is undisputed that (1) the misstatement-of-age provision applies and (2) American General did not pay the adjusted death benefit amount resulting from the

formula in the misstatement-of-age provision, instead paying only the cash surrender value of each Policy.

### A.    New Jersey law mandates a misstatement-of-age provision that requires an insurer to pay an adjusted death benefit if the insured's age was misstated.

The Policies are governed by New Jersey law. As a preliminary matter, New Jersey law requires all life insurance policies contain a provision explaining what the insurer must pay under a policy, as a matter of New Jersey law, if the age of the insured has been misstated. *See* N.J.S.A. 17B:25-6. Specifically, section 17B:25-6 provides:

> There shall be a provision that if the age of the insured . . . has been misstated, any amount payable or benefit accruing under the policy shall be such **as the premium would have purchased at the correct age or ages.**

(emphasis added). Thus, New Jersey law does not permit an insurer to refuse to pay death benefits in the event of a misstatement of age. Rather, New Jersey law ***requires*** the insurer to pay death benefits in an adjusted amount that reflects what the premiums paid would have purchased at the correct age. *See id.*

### B.    Consistent with New Jersey law, American General included a provision in the Policies that requires it to pay an adjusted death benefit amount in the event of a misstatement of age.

In compliance with New Jersey law, the Policies contain a misstatement-of-age provision. SUMF ¶ 18. The provision states in pertinent part:

> If the . . . age of the insured . . . has been misstated to Us, We will adjust the excess of the Death Benefit Amount over the Accumulation Value on the date of death to that which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate.

*Id.* (emphasis added). Here, the terms of the misstatement-of-age provision clearly apply based on American General's position there has been a misstatement of age.[5] *Id.* ¶¶ 14, 18. Indeed,

---

[5] As previously stated, for purposes of this Motion, Securities Intermediary assumes the age of the

consistent with this, the Court has already determined American General is "obligated under each [P]olicy to pay the Death Benefit Proceeds according to the terms of the Misstatement of Age provisions." D.E. 47 at 7 (emphasis added); *see also id.* at 8 ("the Court agrees with Defendant that Plaintiff must calculate the adjusted death benefit for each Policy according to the terms of the Misstatement of Age provisions…").

### C. In determining the adjusted death benefit amount, and as already ordered by the Court, American General must follow the formula set forth in the provision, which results in at least $ 3.9 million for each Policy.

The misstatement-of-age provision sets forth the precise formula American General must follow to determine the amount of adjusted death benefits. SUMF ¶ 20. Consistent with New Jersey law, it requires American General to "adjust" the Death Benefit Amount "to that which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate." *Id.* ¶ 21. In other words, the adjusted death benefit amount (the amount American General must pay) is equal to the death benefits the Insured would have purchased with the Monthly Deduction amount in July 2020 if he were 86 years old. *See id.* ¶¶ 21-26 & Declaration of Scott Willkomm. Applying this formula—which the Court has already determined American General must do, *see* D.E. 47 at 7, 8—indisputably results in an adjusted death benefit amount that is *at least* $ 3.9 million for each Policy. SUMF ¶¶ 27–28 & Declaration of Scott Willkomm.

But American General has refused to pay the adjusted death benefit amount as required by New Jersy law and the Policies. To add insult to injury, and in bad faith, American General has refused to even calculate the adjust death benefit amount it is required to calculate (and pay) under New Jersey law and the Policies. American General has clearly breached the Policies.

---

Insured was misstated.

II.    **SECTION 7702 OF THE INTERNAL REVENUE CODE DOES NOT PERMIT—MUCH LESS REQUIRE—AMERICAN GENERAL TO CHANGE THE MATURITY DATE AND THEREBY TERMINATE THE POLICIES.**

To try to avoid application of the misstatement-of-age provision (and in turn, a finding that it breached the Policies), American General relies on Section 7702 of the Internal Revenue Code ("Section 7702"). American General claims that Section 7702 requires it to change the contractually-defined Maturity Dates to the date the Insured attained 100 years of age, such that the Policies terminated at that time. But, as a matter of law, Section 7702 has nothing to do with the validity of the Policies or with American General's contractual obligations under the Policies, and it certainly does not *require* American General to terminate the Policies when the Insured attains 100 years.

A.    **Section 7702 affects only the tax treatment of life insurance policies.**

Section 7702 defines what the federal government considers to be a "life insurance contract" for purposes of federal income taxation. *Webber v. Comm'r*, 144 T.C. 324, 371 (2015) ("In 1984 Congress created a statutory definition of the term 'life insurance contract' for Federal income tax purposes.") (emphasis added). It is used to determine how the proceeds the policy generates are taxed. *See* Robert D. Colvin, Rev. Rul. 2005-6—Section 7702 Issue, VMF0616 ALI-ABA 383, 386 (2005). The proceeds of policies not meeting the government's definition are taxable as ordinary income, while proceeds from policies that do meet the definition are tax-advantaged. *See id.* ("A contract must meet the statutory definition of 'life insurance contract' contained in Section 7702 for increases in its cash values to escape current income taxation and for death benefits to be receivable totally without federal income tax liability.") (emphasis added); see also *Brown v. C.I.R,* 101 T.C.M. (CCH) 1374 (T.C. 2011), *aff'd sub nom. Brown v. Comm'r*, 693 F.3d 765 (7th Cir. 2012) (citing 26 U.S.C. 101(a)(1)) ("Any amounts

8

received under a life insurance contract that were paid because of the death of the insured are excludable from the gross income of the recipient; that is, they are not taxable.")

    For a life insurance policy to meet the definition in Section 7702 and receive favorable tax treatment, the policy must satisfy one of two tests: either the "cash value accumulation test" (CVAT) or both the "guideline premium" and "cash value corridor" test (GPCT). 26 U.S.C. § 7702(a); *see also Webber*, 144 T.C. at 371. The statute defines all of these terms, and Section 7702(e) provides "Computational rules" for performing the required actuarial calculations under the two tests (which are necessarily complex in order to limit attempts to "game the system" to include investment-oriented policies under the definition). Zaritsky & Leimberg: *Tax Planning with Life Insurance*, ¶ 4.01; *see also* 1984 General Explanation, note 80, at 652 ("By prescribing computation assumptions for purposes of the definitional limitations, Congress limited the investment orientation of contracts while avoiding the regulation of the actual terms of insurance contracts.") .

    As relevant here, one of the four "computational rules" applied when performing these tests is that "for purposes of this section [i.e., Section 7702]… the maturity date…***shall be deemed to be*** no earlier than the day on which the insured attains age 95, and no later than the day on which the insured attains age 100…" § 7702(e)(1)(B). In other words, for purposes of determining whether a policy passes the CVAT or GPCT tests, section (e) ***assumes*** (***deems***) the maturity date falls within a certain age range (age 95 to age 100), notwithstanding a different contractual maturity date. *Id.* (emphasis added); *see also* 1984 General Explanation, note 80, at 652 ("***[I]rrespective of the maturity date actually set forth in the contract***, the maturity date . . . is deemed to be no earlier than the day on which the insured attains age 95 and no later than the day on which the insured attains age 100.") (emphasis added).

So if the contractual maturity date is between 95 and 100 years old, the contractual date is used.  But if the contractual maturity date is less than 95 years old, then a maturity date of 95 years old is used, and if the contractual maturity date is 101 years old or more, then a maturity date of 100 years old is used. *See* Andrew Pike, *Reflections on the Meaning of Life: An Analysis of Section 7702 and the Taxation of Cash Value Life Insurance*, 43 N.Y.U. Tax. L. Rev. 491, 543, 548 (1988) (citing § 7702(e)(2)(B)) ("Where the [life insurance] contract contains an earlier maturity date [than age 95], the tax net single premium and the guideline premiums are computed on the fiction that the maturity date occurs when the insured reaches age 95. Use of this fictional maturity date reduces the tax net single premium and the guideline premiums.") (emphasis added); see also 1984 General Explanation, note 80, at 652 ("By prescribing computation assumptions for purposes of the definitional limitations, Congress limited the investment orientation of contracts while avoiding the regulation of the actual terms of insurance contracts.").

The assumption of a maturity date under Section 7702 for purposes of performing the calculations for federal tax purposes has no effect on whether the policy is a valid and enforceable "life insurance contract" as a matter of law—and American General knows this.  It is simply a variable that gets plugged into the equations for CVAT and GPCT tests. *See* 1984 General Explanation, note 80, at 651; see also Pike, Reflections on the Meaning of Life at 543, 548 (the purpose of the assumption is to limit "the extent to which use of certain actuarial assumptions will increase the investment orientation by establishing an early (or late) maturity date for the contract").

If a life insurance policy does not satisfy either of the two tests under Section 7702, the policy simply loses specific tax benefits but ***still continues to be treated as a valid and enforceable insurance contract***. *See* 26 U.S.C. § 7702(g)(3) ("Contract continues to be treated as insurance

contract."). Specifically, if a life insurance policy does not satisfy either of the two tests, (1) the gains in the cash values of the policy would be taxable to the policy owner, *see* Colvin, Rev. Rul. 2005-6—Section 7702 Issue, VMF0616 ALI-ABA at 386, and (2) the death benefits paid to the beneficiary on the insured's death become partially taxable, *id;. see also In re Tyler*, No. 03-13597-JMD, 2004 WL 903826, at *2 (Bankr. D.N.H. Apr. 21, 2004) ("Death benefit proceeds are generally not taxable to anyone, so long as the policy qualifies as a life insurance policy under the IRC."). Again, as a life insurance company, there is no question that American General is well aware and versed on Section 7702 and its inapplicability to the validity and enforcement of life insurance policies.[6]

### B. Because Section 7702 does not require a change to the Policies' Maturity Dates, American General cannot modify the Policies.

The "Reservation of Rights" provision in the Policies provides:

> Upon notice to You, this policy may be modified by Us, but only if such modification is necessary to make any changes as ***required*** by the Internal Revenue Code or by any other applicable law, regulation or interpretation in order to continue treatment of this policy as life insurance.

SUMF ¶ 20 (emphasis added). Based on the plain language of this provision, American General can modify the Policies only if the change is "required" by the Internal Revenue Code or other applicable law to continue treatment of the Policies as life insurance. *Id.*; *see also Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (explaining that clear terms of policies must be enforced as written). Although American General claims that Section 7702(e)(1)(B) *requires* a change in

---

[6] The absurdity of American General's position is highlighted when one considers that the purpose of section 7702 is to *benefit* the beneficiary by affording it favorable tax advantaged treatment on the *payment of death benefits*. In other words, section 7702 actually presumes death benefits will be paid. In addition, if section 7702 is met, the beneficiary is able to keep *more* of the death benefits proceeds because less must be paid in taxes. In direct contravention of this, American General is using section 7702 to try to terminate the Policies and not pay *any* death benefits.

the Policies' Maturity Dates, this is incorrect as a matter of law, as explained above. Tellingly, American General's expert, Jim Toole, admits that section 7702 does not preclude an insurance carrier from issuing policies that mature past 100 years of age. Expert Report of Jim Toole at ¶ 74 ("[a]lthough the [Internal Revenue] [C]ode does not explicitly preclude an insurer from charging for mortality beyond age 100, . . . ") (emphasis added).

Put simply, American General's position is frivolous. Insurance carriers are well aware that the sole purpose of Section 7702 it to set forth the criteria for a policy to receive favorable *tax treatment*. Section 7702 does ***not*** require a change in the contractual Maturity Dates in order for the Policies to continue to be treated as valid life insurance policies. As such, American General cannot make any modification to the Policies under the Reservation of Rights provision.

## CONCLUSION

For the foregoing reasons, the Court should enter partial summary judgment in favor of the Securities Intermediary on Counts I and II of the Counterclaim.

Dated: April 11, 2025                    **K&L GATES LLP**

                                         */s/ Steven L. Caponi*
                                         Steven L. Caponi (No. 3484)
                                         Matthew B. Goeller (No. 6283)
                                         Megan E. Hunt (No. 6569)
                                         600 N. King Street, Suite 901
                                         Wilmington, DE 19801
                                         Phone: (302) 416-7000
                                         steven.caponi@klgates.com
                                         matthew.goeller@klgates.com
                                         megan.hunt@klgates.com

                                         *Counsel for Defendant*