# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> WILMINGTON TRUST, NATIONAL ASSOCIATION, <br><br> Defendant. | C.A. No. 22-1092-GBW |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, <br><br> Defendant/Counter-Plaintiff, <br><br> v. <br><br> AMERICAN GENERAL LIFE INSURANCE COMPANY, <br><br> Plaintiff/Counter-Defendant. | |

**DEFENDANT/COUNTER-PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO ALLOW DEFENDANT TO SUBMIT EXPERT REPORT AND TO AMEND CASE SCHEDULE FOR THE LIMITED PURPOSE OF ENFORCING COMPLIANCE WITH TIMELY-SERVED DISCOVERY**

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. Hunt (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.hunt@klgates.com

*Counsel for Defendant*

Dated: July 24, 2025

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................... 3

III. LEGAL ARGUMENT .......................................................................................................... 8

   A. Under the applicable Pennypack Factors, the Court Should Permit Defendant to Issue its Expert Report ................................................................................................................ 8

   B. There is Good Cause to Amend the Scheduling Order to Enforce Compliance with Limited Outstanding Fact Discovery ............................................................................. 13

IV. CONCLUSION ................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abbott Labs. v. Lupin Ltd.*,
    2011 WL 1897322 (D. Del. May 19, 2011) ................................................................. 8, 9

*Abbott Labs. v. Lupin Ltd.*,
    No. 09-152-LPS (D. Del. Jan. 25, 2011) ........................................................................ 13

*Abraxis BioScience, LLC v. Actavis, LLC*,
    2017 WL 2079647 (D.N.J. May 15, 2017) ..................................................................... 10

*Braun Melsungen AG v. Terumo Med. Corp.*,
    No. 09-347 (D. Del. Jan. 2010) ...................................................................................... 13

*Callwave Communications., L.L.C. v. AT&T Mobility LLC*,
    2015 WL 13730253 (D. Del. Dec. 17, 2015) ................................................................. 10

*Coleco Indus. Inc. v. Berman*,
    567 F.2d 569–70 (3d Cir. 1977) ..................................................................................... 11

*Gordian Medical, Inc. v. Vaughn*,
    2023 WL 3340207 (D. Del. May 10, 2023) ................................................................... 13

*Holbrook v. Woodham*,
    2008 WL 544719 (W.D.Pa. Feb. 28, 2008) .................................................................... 11

*Kennedy Funding, Inc.*,
    245 F. App'x 161, 165 (3d Cir. 2007) ............................................................................. 8

*Novartis Pharms. Corp. v. Actavis, Inc.*,
    2013 WL 7045056 (D. Del. Dec. 23, 2013) ................................................................... 10

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) .............................................................................................. 8

*Pers. Audio, LLC v. Google, Inc.*,
    2020 WL 774407 (D. Del. Feb. 18, 2020) ....................................................................... 8

*Semper v. Santos*,
    845 F.2d 1233 (3d Cir. 1988) ......................................................................................... 11

*Spiegel v. Goldin Auctions, LLC*,
    2025 WL 1305858 (D.N.J. May 6, 2025) ....................................................................... 13

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir.1999) ..................................................................................................11

*Trask v. Olin Corp.*,
    298 F.R.D. 244 (W.D. Pa. 2014) .........................................................................................15

*United States v. 68.94 Acres of Land*,
    918 F.2d 389 (3d Cir. 1990) ................................................................................................11

*Withrow v. Spears*,
    967 F. Supp. 2d 982 (D. Del. 2013) ...............................................................................10, 11

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
    2012 WL 1669555 (D. Del. May 10, 2012) .........................................................................8

*Yong ex rel. Yong v. The Nemours Foundation*,
    432 F. Supp. 2d 439 (D. Del. 2006) ....................................................................................15

*Zimmer Surgical, Inc. v. Stryker Corp.*,
    365 F.Supp.3d 466 (D. Del. 2019) ................................................................................10, 13

**Statutes**

IRC section 7702 ..........................................................................................................................3, 9

N.Y. U.C.C. § 8-102(a)(14)(ii) .......................................................................................................1

**Other Authorities**

Federal Rule of Civil Procedure ........................................................................................1, 13, 15

Defendant/Counter-Plaintiff, Wilmington Trust, N.A., as Securities Intermediary ("Securities Intermediary"),[1] respectfully moves this Court to amend the case schedule pursuant to Federal Rule of Civil Procedure 16(b) to enforce plaintiff American General Lifer Insurance Company's ("American General") compliance with limited, outstanding timely-served fact discovery, and submission of an expert report.

I.    INTRODUCTION

During the discovery period, Securities Intermediary made repeated efforts to obtain relevant information about the Policies that was timely requested from American General that is relevant to determining the adjusted death benefits owed by American General in the event of a misstatement of age on the Policy applications. In response to these discovery requests, however, American General continually delivered incomplete information. As of the expiration of both the fact and expert discovery deadlines, American General still had not furnished complete information about the Policies, interfering with the ability of Securities Intermediary's intended expert to complete and issue his report. Moreover, while Securities Intermediary timely served a Rule 30(b)(6) deposition notice for November 1, 2024, the parties began exploring the possibility of mediation and discussed requesting a stay or extension of certain deadlines (including discovery) to avoid potentially unnecessary costs until mediation had been completed.

Over the course of the following two months, while counsel continued discussing the mediation, Securities Intermediary believed in good faith there was an agreement to extend the discovery deadlines  In March, however, counsel for American General changed course, insisting that fact and expert discovery had already closed and he had not agreed (and would not agree) to

---

[1] At all times, Wilmington Trust, N.A. acts solely as the Securities Intermediary for the benefit of Geronta Funding, a Delaware statutory trust ("Geronta"), and does not act in its individual capacity. *See, e.g.*, N.Y. U.C.C. § 8-102(a)(14)(ii).

proceed with the pending and timely noticed deposition or with expert discovery. Counsel for American General also refused to produce outstanding policy information that was the subject of two Requests for Production timely served by Securities Intermediary during the discovery period. Securities Intermediary to raise the issue before the Court in a discovery letter, explaining its position that counsel for the parties had an agreement to extend the deadlines. The Court disagreed, finding no agreement had been entered into and confirming the deadlines in the operative Scheduling Order (which were based on a then-scheduled trial date of June 9, 2025 as set forth in D.I. 52).

Subsequently, on June 17, the parties engaged in mediation, but were unsuccessful. Pursuant to the Court's instruction, the parties filed a joint status report after the mediation informing the Court of the "case posture and address, among other matters, *the parties' respective positions on the propriety and scope of any potential additional pre-trial discovery*." D.I. 81 ¶ 5 (emphasis added). As noted in the joint status report, Securities Intermediary seeks the ability to complete pre-trial discovery, specifically:[2]

> (1) Submission of an expert report on the two issues on which American General's expert has opined: (a) calculation of adjusted death benefits owed to Securities Intermediary under the Policies' misstatement-of-age provisions (the "MOA provision") and (b)

---

[2] In an effort to simplify the matter, this Motion seeks a narrower set of discovery than mentioned in the Joint Status Report. Importantly, the outstanding fact discovery requested herein is not "*additional*…discovery" that Securities Intermediary wishes to serve. Securities Intermediary is simply seeking for American General to *complete* discovery that Securities Intermediary timely requested and/or noticed within the fact discovery period. Specifically, the outstanding Policy information was requested in two separate Requests for Production served well before the fact discovery deadline and the Rule 30(b)(6) deposition of American General was noticed weeks before the fact discovery deadline for depositions. Securities Intermediary is merely asking that American General *comply* with its discovery obligations.

2

       applicability and effect of IRC section 7702 on the amount of death benefits owed to Securities Intermediary;

(2) Specific policy information directly responsive to timely-served discovery requests that were the subject of an extensive meet and confer process; and

(3) Rule 30(b)(6) deposition of American General, timely-noticed within the discovery period.

Securities Intermediary respects the Court's prior determination that the parties had not reached an agreement to extend the fact and expert discovery deadlines. Nevertheless, Securities Intermediary submits the Court should allow submission of an expert witness report under the applicable *Pennypack* factors, and that there is good cause under Rule 16(b)(4) to allow for the limited fact discovery requested (particularly given that the prior fact discovery deadline was based on the prior June 2025 trial date, rather than the current October 2025 trial date). Securities Intermediary acted diligently throughout the discovery period to obtain information to which it is indisputably entitled. Securities Intermediary should be afforded a fair opportunity to prove its claims on the merits with complete factual information and the opinion of its expert witness, not be crippled by American General's procedural maneuvering and gamesmanship.

## II.    FACTUAL BACKGROUND[3]

The fact discovery deadline was November 15, 2024. From inception of the case until November 15, 2024, Securities Intermediary diligently pursued discovery. Securities Intermediary served American General with a First Request for Production ("First RFP") and First Set of Interrogatories ("First ROGs") on January 11, 2024. D.I. 42. Among other things, the First RFP requested financial information Securities Intermediary (and its intended expert) would need to

---

[3] Although the parties previously briefed the Court on many of the herein in connection with its March 28, 2025 discovery letter (D.I. 71), the facts are also relevant to the instant Motion.

help confirm the amounts owed to Securities Intermediary under the Policies. The First RFP requested:

1. All Documents relating to each Policy.... including but not limited to premium payment confirmations….
. . .
9. All Documents that reflect information and/or assumptions needed to calculate the adjusted death benefits pursuant to the [Misstatement-of-Age Provision] in each Policy.

D.I. 42. On April 11, 2024, within two weeks of having received American General's responses and objections (D.I. 46) (the "First Discovery Responses"), Securities Intermediary notified American General of deficiencies in the First Discovery Responses and requested a meet and confer. D.I. 71-1 (Ex. A). Counsel for the parties' conferred on August 22, 2024, as a result of which American General indicated it would provide supplemental responses to certain requests.

On July 29, 2024, Defendant served a Second Request for Production of Documents ("Second RFP") and Second Set of Interrogatories ("Second ROGs") (D.I. 49), to which American General responded on September 4, 2024 (the "Second Discovery Responses"). Shortly thereafter, Defendant sent Plaintiff an email identifying deficiencies in the Second Discovery Responses and followed up on the deficiencies to the First Discovery Responses on which the parties had conferred. D.I. 71-1 (Ex. B).

On October 16, 2024, Securities Intermediary served a Third Request for Production of Documents ("Third RFP") and Third Set of Interrogatories on ("Third ROGs"). D.I. 57. Although this third set of discovery asked for financial information that should have been produced in response to, the First RFP, Securities Intermediary specifically identified the missing information to avoid confusion or doubt, particularly because this information was important to the work being conducted by Securities Intermediary's intended expert. The Third RFP and Third ROGs asked for:

4

1. The following, on a monthly basis, from the date of issuance to the date of the Insured's death:
   a. monthly premium payments;
   b. monthly interest rates (i.e., non-guaranteed credited interest rates);
   c. monthly current cost of insurance rates per 1,000 of net amount at risk (i.e., non-guaranteed COIs at the applicable age and risk classification of the insured); and
   d. monthly correct expense charges (i.e., non-guaranteed expense charges).

D.I. 57. This information should have been produced in response to the First RFP, which requested documents relating to each Policy and documents relevant to calculating the amount due on the Policies' misstatement-of-provision. But, as stated above, the information produced in response to the First RFP was incomplete. In fact, even after American General responded to the Third RFP and Third ROGs (as explained below), it still had not produced indisputably responsive and relevant information.

On October 21, 2024, Securities Intermediary served American General with a Notice of Rule 30(b)(6) Deposition to depose American General's corporate representative. D.I. 58. American General noticed several depositions on November 8, 2024. D.I. 60. The depositions were noticed by the parties' respective counsel with understanding that they would be scheduled on a mutually-convenient date.

Around the same time, American General's counsel proposed exploring mediation to avoid additional discovery expenses. Counsel for the parties discussed mediation on at least two occasions during this time. To accommodate the mediation and the noticed depositions, the parties discussed extending the fact and expert discovery deadlines. Based on the conversations between the undersigned and American General's counsel, Securities Intermediary in good faith believed the parties would stipulate to extend the deadlines.

On November 15 (the fact discovery deadline), American General served its responses to the Third RFP and Third ROGs ("Third Discovery Responses"). D.I. 61. In those Responses, it

claimed the documents it had previously produced contained the requested policy financial information. But that was not the case. American General had still not produced complete information specifically identified in the Third RFP and Third ROGs (including certain annual statements, the correct cost of insurance rates, and other monthly information through the Insured's death). Again, Securities Intermediary promptly notified American General of these deficiencies on December 5, 2024. D.I. 71-1 (Ex. H). In that same email, Securities Intermediary also proposed extending fact and expert discovery deadlines, given that the noticed depositions had not been scheduled and American General had not completed its production of relevant information critical for Securities Intermediary's expert report. *See id*.

The following day, on December 6, counsel for Securities Intermediary sent a proposed amended scheduling order. *See id*. However, rather than respond to the email, American General simply served its expert report (*see* D.I. 62), remaining utterly silent on the previously-discussed extensions to the discovery deadlines and the proposed order that had been circulated for its consideration. Immediately thereafter, on the following business day (December 9), Securities Intermediary wrote to American General, again reminding American General of the prior discussion regarding amendment of the deadlines and the pending document production by American General. D.I. 71-1 (Ex. H).

Counsel for the parties continued their discussions on amending the scheduling order and mediation over the course of December and early January. D.I. 71-1 (Exs. H-I). During the discussions, Securities Intermediary's counsel reiterated the pending discovery (including the missing policy financial information) was still needed, which American General's counsel appeared to recognize. *Id.* In fact, on January 8, 2025, counsel for American General proposed requesting a stay of proceedings pending mediation, and if the parties didn't settle, "pick[ing] up

6

where we left off ***and mov[ing] forward with depos, motions etc.***" D.I. 71-1 (Ex. H).  Counsel for American General also stated that before mediation, it would "furnish you the remainder of whatever ***paper discovery we owe you*** so that you can fully quantify your position before a mediation."  Thus, Securities Intermediary continued to believe in good faith the parties agreed to complete fact and expert discovery after mediation if it were unsuccessful.  Indeed, even in late January, counsel for American General continued to promise the outstanding fact discovery and recognized Securities Intermediary would be submitting an expert report.  *See id.* ("*I'll work to get you the clean-up documents you referenced….That will also give you time to get us anything on the expert opinion from that you want us to consider*") (emphasis added).

Over the following month, American General's counsel changed course, stating it would not agree to "re-open" discovery until after mediation.  D.I. 71-1 (Ex. J)  Counsel for Securities Intermediary clarified it was not seeking to "re-open" discovery but to complete the outstanding discovery—specifically, to receive the financial policy information that *still* had not been produced, to schedule the noticed Rule 30(b)(6) deposition for American General, and to submit Securities Intermediary's expert report and conduct the experts' respective depositions.  *Id.*

Because the parties could not reach an agreement, they raised the issue before the Court.  D.I. 71, 67.  On April 2, 2025, the Court denied the motion to compel, finding that "Defendant failed to show the parties entered into such an agreement, and the court cannot enforce agreements that were considered but not ultimately agreed to and entered by the parties."  D.I. 72.

Subsequently, the parties agreed to extend other pretrial deadlines, including the diapositive motion deadline and trial dates, to pursue medication.  On April 15, the Court entered the stipulated order.  D.I. 81 (the "Order").  The Order provides that, if mediation fails, the parties will file a joint status report to address "the parties' respective positions on the propriety and scope

of any potential additional pretrial discovery." Thus, the Order contemplates the Court could allow for some additional pretrial discovery. *See id.*

The parties participated in mediation on June 26 but were unsuccessful in resolving the case. As provided by the Court in its Order, the parties submitted a joint status report on July 8. D.I. 108. In the report, Defendant noted it would file a motion to amend the case schedule to allow for "additional pre-trial discovery" that is needed for this case. In furtherance of that request, Defendant now files this Motion.

### III.   LEGAL ARGUMENT

#### A.   Under the applicable Pennypack Factors, the Court Should Permit Defendant to Issue its Expert Report

Federal courts favor the resolution of disputes on their merits. *Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322, at *3 (D. Del. May 19, 2011); *Kennedy Funding, Inc.*, 245 F. App'x 161, 165 (3d Cir. 2007) ("[O]ne of the basic objectives of the federal rules... [is] the determination of cases on their merits."). Exclusion of critical evidence, including expert testimony, "is considered an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994) (internal quotation omitted).

The Third Circuit has elucidated several factors to consider in determining whether or not expert testimony should be excluded: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded (the "*Pennypack* factors"). *See Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 1669555, at *2 (D. Del. May 10, 2012); *Pers. Audio, LLC v. Google, Inc.*, 2020 WL 774407, at *1 (D. Del. Feb. 18, 2020)

8

(affirming report and recommendation from magistrate judge recommending that late expert testimony be permitted). This Court, in particular, typically looks to the "overall balance" of the *Pennypack* factors, and is guided by the admonition that evidence like an expert report should not be excluded entirely absent extreme or flagrant conduct. *See Abbott Labs.*, 2011 WL 1897322 at *3–5 (denying a motion to preclude evidence and noting that although a single *Pennypack* factor might favor exclusion of evidence, this sanction is generally reserved for circumstances where "the overall balance" of these factors compels exclusion).

Here, each of the factors strongly favors allowing Securities Intermediary to submit an expert report. *First*, American General cannot credibly claim surprise or prejudice. From the outset of the case, the parties contemplated the disclosure of expert witnesses and, as a result, their initial proposed Scheduling Order included deadlines for expert discovery. As the initial expert report deadline approached, counsel for the parties discussed extending the deadline for initial expert reports and on several occasions, Securities Intermediary explained that certain outstanding fact discovery that is important and relevant to its expert's analysis, further confirming that Securities Intermediary (like American General) would disclose an expert.

As to the substance of Securities Intermediary's intended expert witness report, there is likewise no surprise. The filings in this case, including both parties' respective summary judgment motions, confirm that the case boils down to two issues: (1) the amount of death benefits owed under the Policies and (2) the applicability (or inapplicability) of IRC section 7702 on the amount of death benefits owed. These are the two issues on which American General's expert offered his opinion, and on which Securities Intermediary similarly seeks to offer expert opinion. Both parties have had an opportunity to obtain factual discovery on and to brief these issues and have done so extensively. This is not a scenario where Securities Intermediary's intended expert report will

9

inject new facts or legal theories into the case. *See Novartis Pharms. Corp. v. Actavis, Inc.*, 2013 WL 7045056, at *9 (D. Del. Dec. 23, 2013) (allowing untimely expert report because this "is not a scenario where the [proposed expert] generated an entirely new theory, one never before fairly disclosed, and then the [moving party] sprung it on [the other party] weeks before trial"); *Withrow v. Spears*, 967 F. Supp. 2d 982, 1004 (D. Del. 2013) (finding "surprise" factor did not favor exclusion where opposing party had a good understanding as to movant's position on the topics for which it sought to offer expert opinion); *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F.Supp.3d 466, 499 (D. Del. 2019) (finding minimal prejudice because the opposing party's expert had already addressed the same issue in their own report).

*Second*, any potential (unlikely) prejudice to American General can be cured by allowing it to depose Securities Intermediary's expert, whom Securities Intermediary will make available for deposition,[4] or by submitting a rebuttal report if appropriate. *See also Callwave Communications., L.L.C. v. AT&T Mobility LLC*, 2015 WL 13730253 at *2-3 (D. Del. Dec. 17, 2015) (exclusion of an untimely expert report was not warranted where, among other things, there was still time to depose the experts); *Withrow*, 967 F. Supp. 2d at 1004 (finding that ability to depose the expert on untimely opinion prior to trial mitigates any prejudice) *Abraxis BioScience, LLC v. Actavis, LLC*, 2017 WL 2079647, at *4 (D.N.J. May 15, 2017) ("the fact that some additional work may be required does not constitute undue prejudice").

*Third*, allowing Securities Intermediary to submit its expert report will not disrupt trial. Trial is scheduled three months away on October 21, 2025. Securities Intermediary is prepared to submit its expert report quickly (and certainly months before trial). Rebuttal expert reports, if

---

[4] To facilitate matters and help American General avoid the time and expense of traveling to the proposed expert for his deposition, the deposition can simply take place via Zoom.

necessary, can then be issued 7-10 days thereafter, and depositions can take place within the following 7-10 days. Under this proposed schedule, expert discovery can be completed at least a month before the trial.[5]

*Fourth*, there is no evidence of any bad faith or intentional misconduct. The Third Circuit has found bad faith where the violation at issue was one in a line of violations by the non-moving party. *See In re TMI Litig.*, 193 F.3d 613, 722 (3d Cir.1999) (finding bad faith where defendants engaged in a "pattern of filings that constituted a flagrant violation" of court's orders and did not seek leave of court before filing untimely expert reports). This Court has similarly expressed that a bad faith finding should be reserved for cases of "egregious" behavior. *Withrow*, 967 F. Supp. 2d at 1006-07 (relying on *Holbrook v. Woodham*, 2008 WL 544719 (W.D.Pa. Feb. 28, 2008)) (finding of willfulness "should be reserved for repeated disregard for court orders or otherwise 'flagrant' disregard of those orders").

That is far from the situation here. Securities Intermediary has not violated a single court order, much less engaged in a pattern of repeated violations of court orders. Rather, Securities Intermediary is seeking leave to submit an expert report because it was under a good faith belief that the parties had agreed (or at a very minimum, had an understanding) to extend the expert report deadlines to accommodate mediation and afford American General additional time to

---

[5] The timing in this case stands in stark contrast to other cases where the Third Circuit upheld the exclusion of expert witnesses. *Cf. Semper v. Santos*, 845 F.2d 1233, 1237–38 (3d Cir. 1988) (upholding the district court's exclusion of an expert witness who had not been named by the deadline set by the court, where the existence of the expert only became apparent *one day before trial* and where the expert's testimony was not that important); *Coleco Indus. Inc. v. Berman*, 567 F.2d 569–70, n. 14 (3d Cir. 1977) (upholding the district court's exclusion of a study propounded by plaintiff's expert *in the midst of a complex trial* where counsel had no excuse for its failure to advise the court of the testimony in accord with the court's prior order); *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396–97 (3d Cir. 1990) (upholding the exclusion of plaintiff's expert when, *at trial*, the expert relied on data that plaintiffs had failed to disclose in accord with a pretrial order).

11

produce outstanding fact discovery (that American General admitted it owed) relevant to Securities Intermediary's expert report. Counsel for the parties engaged in several discussions that reasonably suggested that if mediation were unsuccessful, the parties would—according to American General—"pick up where [they] left off and move forward with depos, motions, etc." D.I. 71-1 (Ex. H). While the Court determined the parties did not enter into an enforceable agreement, Securities Intermediary nevertheless acted based on a genuine good faith understanding. There is simply no evidence of willful delay or tactical gamesmanship on the part of Securities Intermediary.

*Fifth*, the opinion of Securities Intermediary's expert is of utmost importance to Plaintiff's case. According to American General, the insured misstated his age on his applications for the Policies. If American General meets its burden to prove a misstatement of age (which it cannot), then the amount of death benefits contractually owed must be adjusted pursuant to the formula in the MOA provision of the Policies. The required calculation is not straightforward, as it involves computing various policy values over the life of the Policies. According to American General expert's, the calculation results in an adjusted death benefit amount of zero. Securities Intermediary has submitted competing evidence that the calculation results in an adjusted death benefit of at least $3.9 million for each Policy. This evidence, however, is in the form of admissible lay witness testimony from a person with personal knowledge.[6] Not allowing Securities Intermediary to submit *expert* opinion on the issue would unfairly skew the evidentiary balance and would deprive Securities Intermediary of a fair opportunity to rebut American General's expert analysis on the

---

[6] In support of its motion for partial summary judgment, Securities Intermediary submitted the declaration of Mr. Scott Willkomm, who was personally involved in servicing the Polices and whose day-to-day responsibilities and experience as the former CEO of Life Equity involved calculating amounts owed by insurance carriers. D.I. 77.

central issue of the case. *See Abbott Labs. v. Lupin Ltd.*, No. 09-152-LPS (D. Del. Jan. 25, 2011) (importance of the witness's testimony weighs against exclusion even when a disclosure is untimely); *Braun Melsungen AG v. Terumo Med. Corp.*, No. 09-347 (D. Del. Jan. 2010) (declining to exclude a late-disclosed rebuttal expert report given the importance of the expert's opinion); *Zimmer Surgical, Inc.*, 365 F. Supp. 3d. at 449 (allowing untimely expert opinion no damages because it was "undeniably important").

Because all of the *Pennyback* factors weight against exclusion, the Court should permit Securities Intermediary to submit an expert report addressing the same issues raised in American General's expert report.

### B. There is Good Cause to Amend the Scheduling Order to Enforce Compliance with Limited Outstanding Fact Discovery

A district court has wide discretion in managing the litigation schedule. *See generally* Fed. R. Civ. Pro. 16. Under Rule 16(b)(4), a schedule may be modified for good cause and with the judge's consent. *Id.* The good cause inquiry focuses on the diligence of the party seeking the modification of the scheduling order. *Spiegel v. Goldin Auctions, LLC*, 2025 WL 1305858, at *4 (D.N.J. May 6, 2025). In *Gordian Medical, Inc. v. Vaughn*, 2023 WL 3340207, at *2 (D. Del. May 10, 2023), for example, the Court found good cause to amend the scheduling order to allow for the completion of document discovery and depositions where the plaintiffs diligently pursued document discovery but were met by obstruction by the defendant.

As in *Gordian*, here, Securities Intermediary was diligent in seeking the discovery it wishes to complete: (1) the outstanding document production and (2) the Rule 30(b)(6) deposition of American General's corporate representative.

*First*, Securities Intermediary began seeking the outstanding document production as far back as January 2024 when it served the First RFP, which requested, among other things:

13

      2.    All Documents relating to each Policy.... including but not limited to premium payment confirmations….

. . .

      9. All Documents that reflect information and/or assumptions needed to calculate the adjusted death benefits pursuant to the [Misstatement-of-Age Provision] in each Policy.

D.I. 42. Securities Intermediary again requested this information in October 2024 through the Third RFP and Third ROG, which specifically requested the following monthly information through the Insured's date of death:

    a. Monthly premium payments;
    b. Monthly current credited interest rates (i.e., non-guaranteed credited interest rates);
    c. Monthly correct current cost of insurance rates per 1,000 of net amount at risk (i.e., non-guaranteed COIs at the applicable age and risk classification of the insured); and
    d. Monthly correct expense charges (i.e., non-guaranteed expense charges).

D.I. 57. American General served its Third Discovery Responses on November 15—<u>the day of the fact discovery deadline</u>. But, upon reviewing those responses and American General's supplemental production, Securities Intermediary identified missing information—specifically, American General had not produced the requested monthly information for Policy "13L" from 11/6/19 through 8/3/20 and for Policy "84L" from 2/19/20 to 8/3/20. D.I. 71-1 (Ex. I). American General's counsel even admitted on January 8 that it "owed" Securities Intermediary this information. D.I. 71-1 (Ex. H) (noting, as part of the mediation discussions, that "we would furnish you the remainder of whatever *paper discovery we owe* you so that you can fully quantify your position before a mediation") (emphasis added). As of the date of this Motion, however, American General *still* had not produced this information. American General should not be permitted to circumvent its obligation to produce responsive, relevant information that was timely-requested

14

simply because the fact discovery deadline has expired.[7]

*Second*, Securities Intermediary timely served a Rule (30(b)(6) deposition notice on American General on October 21, 2024—well before fact discovery closed on November 15. D.I. 58. Around that time, however, the parties began exploring mediation and discussed staying the pending depositions until after mediation. In fact, when American General subsequently served its own deposition notices on November 1, it explained it was serving them as "placeholder depo notices" that the parties "would mutually put on ice given our plan to try to mediate before that next phase of work." D.I. 70 (Ex. A).

Allowing Securities Intermediary to complete these two limited aspects of fact discovery will not unduly prejudice American General or delay the proceedings. *See, e.g., Yong ex rel. Yong v. The Nemours Foundation*, 432 F. Supp. 2d 439 (D. Del. 2006) (granting motion to amend and allowing additional discovery that was narrowly tailored to address specific issues). In fact, the Court's April 4. 2025 Order expressly contemplated that additional pre-trial discovery might be necessary after mediation. *See* D.I. 81. Here, the outstanding document production is information that is readily available to American General and, there are still three months before trial, affording the parties plenty of time to schedule a single Rule 30(b)(6) deposition.

Notably, Securities Intermediary does not seek to amend the scheduling order to conduct *new* fact discovery. As explained above, it simply seeks to enforce American General's compliance with limited outstanding discovery that it timely sought during the discovery period and that it in good faith understood would be forthcoming based on opposing counsel's representations. *See Trask v. Olin Corp.*, 298 F.R.D. 244, 268 (W.D. Pa. 2014) (finding good cause to permit the

---

[7] In fact, under Rule 26(e), American General has a continuing duty to supplement prior discovery responses and productions, even *past* the discovery cutoff. *See* Fed. R. Civ. P. 26(e)(1) (emphasis added).

reopening of fact discovery where the delay was "not simply the result of carelessness or error—rather, it was caused in large part by the representations made by [opposing] counsel regarding prior cases and claims").

IV.   **CONCLUSION**

Securities Intermediary's diligent and persistent efforts to obtain the discovery it requires to resolve the central issues in this case—but inability to do so despite these efforts—constitutes good cause to amend the scheduling order to allow for the completion of limited outstanding fact discovery that was timely served and requested.  Moreover, the *Pennypack* features weigh heavily in favor of allowing Securities Intermediary to offer its expert report on the issues both parties agree are at the heart of this dispute.  The relief requested in this Motion would not prejudice American General and would allow the Court to resolve this dispute on the merits with complete development of the factual record.   For these reasons, this Court should grant the Motion and allow Securities Intermediary to submit its expert report and complete limited outstanding fact discovery.

Dated: July 24, 2025                                                     **K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. Hunt (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.hunt@klgates.com

*Counsel for Defendant*

16